BOISE CASCADE CORPORATION, etc.,
Plaintiff-Appellee,

v.

UNITED STEELWORKERS OF AMERI-
CA, AFL–CIO, LOCAL UNION NO.
7001, Defendant-Appellant.

No. 77–1392.

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1979.

Thomas J. Pillacek, Oralando, Fla.,
George C. Longshore, Birmingham, Ala.,
Bernard Kleiman, Gen. Counsel, Chicago,
Ill., for defendant-appellant.

Norman F. Burke, Orlando, Fla., for
plaintiff-appellee.

Before WISDOM, AINSWORTH and
CLARK, Circuit Judges.

WISDOM, Circuit Judge:

The United Steelworkers of America (the
union) appeals the district court's order va-
cating an arbitrator's award. We agree
with the union that the district court's or-
der exceeded the proper scope of judicial
review of labor arbitration awards. Ac-
cordingly, we reverse.

Boise Cascade Corporation (the employer)
operates a plant in Orlando, Florida, in
which it manufactures cans. The employer
and the union entered into a collective bar-
gaining agreement for this plant. Article
XIII of that agreement provided for bind-
ing arbitration of grievances. In part, it
stated:

> The Arbitrator shall have jurisdiction and
> authority to apply, interpret, or deter-
> mine compliance with the sections of the
> Agreement but may, in no case, add to,
> detract from, or alter in any way, any of
> the provisions of the sections. Decisions
> of the Arbitrator shall be final and bind-
> ing on the Union, the Employer, and the
> employee.

On April 17, 1975, the union filed a griev-
ance complaining that the employer had
paid reduced hourly wages to certain em-
ployees who had elected to accept tempo-

rary jobs with lower paying classifications rather than be temporarily laid off. The union asserted that, by reducing the wages paid to these workers, the employer had violated Appendix A of the collective bargaining agreement. The relevant portions of Appendix A provide as follows:

2. A. An employee who is required by the Employer to work on a job that carries a lower rate of pay than his regular rate of pay shall nevertheless continue to be paid at his current regular rate of pay. *This shall not apply when the employee elects to take such lower rated job through seniority rights, in which event, he shall be paid at the applicable rate for such job but in no case more than the base rate thereof.*

When an employee is offered, but not required to work on a lower rated job, instead of accepting work on such lower rated job, he may go on layoff, if he so desires, until work is again available for him on his regular job.

.        .        .        .        .

D. If an employee is reduced to a lower rated job and is subsequently assigned to a higher rated job he has previously held, he shall not be required to repeat his training period, but shall immediately receive the rate of pay he had previously attained for such job.

(Emphasis added).

In the hearing before the arbitrator, both the union and the employer argued that Appendix A clearly and unequivocally supported their respective positions. The arbitrator determined, however, that Appendix A was ambiguous. The arbitrator then examined evidence extrinsic to the agreement to aid his construction of Appendix A. He concluded that the employer's past practices supported the union's argument that the italicized sentence in Appendix A that is quoted above applied only when an employee *not* faced with a layoff voluntarily elected to take a lower-paying job "through seniority rights".

The employer filed this action to set aside the arbitrator's award. The district court granted the employer's motion for a sum-mary judgment to vacate the award because the court found that the arbitrator's order exceeded his authority and did not draw its essence from the collective bargaining agreement. The court believed that the language in Appendix A clearly and unambiguously provided that an employee would not retain his hourly wage rate when he chose to accept a lower-paying job temporarily rather than be laid off.

■ The scope of the judicial review of arbitration awards is limited. The Supreme Court's seminal decisions on this issue are the *Steelworkers Trilogy: Steelworkers v. American Manufacturing Co.*, 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; *Steelworkers v. Warrior & Gulf Navigation Co.*, 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; *Steelworkers v. Enterprise Wheel & Car Corp.*, 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. The Court in *Enterprise Wheel* held that

the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

363 U.S. at 599, 80 S.Ct. at 1362. Similarly, the Court in *Warrior & Gulf* stated that "judicial inquiry . . . must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator the power to make the award he made". 363 U.S. at 582, 80 S.Ct. at 1353.

The premise of the *Steelworkers Trilogy* is that the court should allow the parties to a collective bargaining agreement containing a binding arbitration clause to receive the benefit of the bargain—*binding* arbitration on contract disputes. Professor St. Antoine recognized the soundness of this doctrine when he wrote:

Put most simply, the arbitrator is the parties' officially designated "reader" of the contract. He (or she) is their joint

*alter ego* for the purpose of striking whatever supplementary bargain is necessary to handle the anticipated unanticipated omissions of the initial agreement. Thus, a "misinterpretation" or "gross mistake" by the arbitrator becomes a contradiction in terms. In the absence of fraud or an overreaching of authority on the part of the arbitrator, he is speaking for the parties, and his award *is* their contract.

St. Antoine, *Judicial Review of Labor Arbitration Awards: A Second Look at Enterprise Wheel and Its Progeny,* 75 Mich.L. Rev. 1137, 1140 (1977). This Court has followed this doctrine time and again. In *Safeway Stores v. Bakery Workers Local 111,* 5 Cir. 1968, 390 F.2d 79, 83–84, we stated that any "likelihood [of an 'unpalatable' arbitral award] is the by-product of a consensually adopted contract arrangement . . . . The arbiter was chosen to be the Judge. The Judge has spoken. There it ends." *See, e. g., Electrical Workers Local 1000 v. Markle Manufacturing Co.,* 5 Cir. 1978, 582 F.2d 9, 11 (per curiam) (citing cases).

■ The courts have fashioned few exceptions to the finality of arbitration awards.[1] In *Enterprise Wheel,* the Supreme Court stated that the arbitration award "is legitimate only so long as it draws its essence from the collective bargaining agreement". 363 U.S. at 597, 80 S.Ct. at 1361. This Court has interpreted this limitation as calling for vacation of an arbitrator's award only when it is "without foundation in reason or fact". *Machinists District No. 145 v. Modern Air Transport, Inc.,* 5 Cir. 1974, 495 F.2d 1241, 1244, *cert. denied,* 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 644. These standards require us to conclude that the district court erred when it vacated the arbitration award attacked by the employer. The arbitrator's determinations that the collective bargaining agreement was ambiguous and that extrinsic evidence favored the union's position cannot be said to have no foundation in reason or fact. His award, then, passes muster under the *Steelworkers Trilogy* and *Modern Air Transport.*[2]

■ The employer argues that, when the arbitrator considered extrinsic evidence in formulating his construction of the ambiguity he saw in the collective bargaining agreement, he violated the agreement's requirement that he not "add to, detract from, or alter in any way" any provision of that contract. We disagree. An arbitrator faced with the task of interpreting an arguably ambiguous contract provision may look to extrinsic evidence for assistance. The Supreme Court in *Warrior & Gulf* stated:

> The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and

1. For a general discussion of these exceptions, see St. Antoine, *supra,* 75 Mich.L.Rev. at 1150–60.

2. This case is distinguishable from *Communication Workers v. Western Electric Co.,* 1975, N.D.Ga., 397 F.Supp. 1318, *aff'd,* 5 Cir. 1977, 558 F.2d 816 (per curiam). In that case, the employer had suspended an employee who had been arrested. When the criminal charges were dismissed, the employer reinstated the employee without backpay. The employee filed a grievance under the collective bargaining agreement, which expressly provided that the arbitrator's authority was "limited to a determination of whether or not the Company has acted unreasonably in suspending . . . such Employee". Under the agreement, an employee who had been unreasonably suspended automatically received backpay. The arbitrator determined that the employer had acted reasonably when it suspended the employee but had acted unreasonably when it denied him backpay upon reinstatement. Accordingly, the arbitrator awarded backpay to the employee. The district court refused to enforce this award, holding that the arbitrator had exceeded his authority under the agreement.

*Western Electric* is consistent with the doctrine that courts will enforce clear contractual limitations on the authority of the arbitrator. *See Steelworkers v. Warrior & Gulf Navigation Co.,* 1960, 363 U.S. 574, 585, 80 S.Ct. 1347, 4 L.Ed.2d 1409; *Electrical Workers Local 278 v. Jetero Corp.,* 5 Cir. 1974, 496 F.2d 661. In contrast, the employer in this case does not argue that the collective bargaining agreement barred the arbitrator from deciding the issue in dispute. Rather, the employer simply asserts that the arbitrator misread the agreement and decided the issue incorrectly.

the shop—is equally a part of the collective bargaining agreement although not expressed in it.

363 U.S. at 581–82, 80 S.Ct. at 1352. The "no additions or alterations" clause must not be read as precluding an arbitrator from considering extrinsic evidence to explain an agreement that may rationally be considered ambiguous. A contrary result would allow that clause to override the parties' express desire to provide for "final and binding" arbitration. *See Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1,* 1977, W.D.La., 438 F.Supp. 164, 168.[3]

REVERSED.

---

**3.** Professor St. Antoine agrees:

The difficulty is that any time a court is incensed enough with an arbitrator's reading of the contract and such supplementary data as past practice, bargaining history, and the "common law of the shop," it is simplicity itself to conclude that the arbitrator must have "added to or altered" the collective bargaining agreement. How else can one explain this abomination of a construction? Yet if the courts are to remain faithful to the injunction of *Enterprise Wheel,* they must recognize that most arbitral aberrations are merely the product of fallible minds, not of overreaching power. At bottom, there is an inherent tension (if not inconsistency) between the "final and binding" arbitration clause and the "no additions or modifications" provision. The arbitrator cannot be effective as the parties' surrogate for giving shape to their necessarily amorphous contract unless he is allowed to fill the inevitable lacunae.

75 Mich.L.Rev. at 1153 (footnote omitted).