CITY OF OSHKOSH (Public Library) Plaintiff-Respondent-Petitioner,

v.

OSHKOSH PUBLIC LIBRARY CLERICAL & MAINTENANCE EMPLOYEES UNION LOCAL 796–A, WCCME, AFSCME, AFL–CIO, Defendant-Appellant.

Supreme Court

*No. 79–241. Argued October 27, 1980.—Decided November 25, 1980.*

(Also reported in 299 N.W.2d 210.)

96

For the petitioner there. was a brief by *William P. Nagle,* assistant city attorney, and oral argument by *Thomas Ahrens,* assistant city attorney, both of Oshkosh.

For the defendant-appellant there were briefs by *Richard V. Graylow* and *Lawton & Cates* of Madison, and oral argument by *Richard V. Graylow*.

BEILFUSS, C.J.   This is a review of a decision of the court of appeals which reversed an order entered by the circuit court for Winnebago county: WILLIAM E. CRANE, Circuit Judge.

The controversy in this case stems from a grievance filed by JoAnn Brewer against her employer, the City of Oshkosh (Public Library). The grievance alleged a violation of the collective bargaining agreement entered into by the employer and the Oshkosh Public Library Clerical and Maintenance Employees; Union Local 796–A, AFSCME, AFL–CIO. This matter was processed in accordance with the terms of the agreement and was ultimately heard by an arbitrator. An arbitration award was granted in favor of the union and the employee. Thereafter the employer applied to the circuit court for Winnebago county for an order vacating the arbitration award pursuant to sec. 298.10 (1) (d), Stats.[1] The circuit court entered an order vacating the award and the union appealed. The court of appeals reversed. We subsequently granted the employer's petition to review.

JoAnn Brewer has been employed by the City of Oshkosh (Public Library) [employer] since 1969. She is a member of the Oshkosh Public Library Clerical and Maintenance Employees; Union Local 796–A, AFSCME, AFL–CIO [union]. On May 23, 1977, her employer posted notice of a job opportunity as a Library Assistant II. The qualifications were listed as follows:

---

[1] Sec. 298.10 *et seq.*, Stats., has been renumbered and is now codified at ch. 788. *See* Laws of 1979, ch. 32, sec. 64. For the purposes of this opinion, we will refer to the statutes as they were numbered at the time of the commencement of the arbitration proceedings.

"*REQUIRED QUALIFICATIONS:*
"*. . .*
"Knowledge of books and authors; knowledge of the principles and practices of library science; ability to undertake public contact work involving familiarity with books; ability to establish and maintain harmonious and effective working relationships with patrons and other employees; ability to operate a typewriter when assigned to cataloging, ordering, or similar duties; *two or more years of college (liberal arts) or its equivalent as determined by management.*" (Emphasis added.)

Both Ms. Brewer and another employee, Jill Gust, applied for this position. Ms. Gust, who was hired in 1974, had considerably less seniority than Ms. Brewer. The two employees had substantially equivalent work records, however Ms. Brewer had not attended two years of college. Jill Gust received the job appointment effective June 20, 1977. Ms. Brewer did not receive the job because she did not have the two years of college or "its equivalent as determined by management."

The union filed a grievance on behalf of JoAnn Brewer. The grievance form alleged that the selection of Jill Gust for the Library Assistant II position violated Article VIII, sec. 3 of the 1977–1978 collective bargaining agreement. That provision of the contract provided:

"ARTICLE VIII—Promotions—Job Posting—Transfer Policy
"*. . .*
"Section 3. The employee shall be selected on the basis of *seniority, work record, and qualifications.* In the event an official training program has been conducted for a given position, successful completion of the program shall be the qualifying factor for promotion." (Emphasis added.)

The contract was silent as to who set the qualifications for a particular job description classification.

The matter was processed through the grievance procedure, and as outlined in the contract, the dispute was submitted for final and binding arbitration. The parties applied to the Wisconsin Employment Relations Commission for the appointment of an arbitrator, and Peter G. Davis was assigned to arbitrate the dispute.

On July 22, 1977, a hearing was held at Oshkosh, Wisconsin. At the hearing there was no dispute that JoAnn Brewer had greater seniority than Jill Gust and it was stipulated that the work records of the two employees were equivalent. Therefore the focus of the hearing was upon the qualifications of each employee, especially the qualifications relating to "two or more years of college (liberal arts) or its equivalent as determined by management." The union took the position that based upon her seniority, work record and eight years of experience, it was arbitrary and capricious for the employer to conclude that JoAnn Brewer did not possess the equivalent of two years of liberal arts training. It was therefore claimed that the employer violated its agreement to promote employees based on their qualifications. The employer, the Public Library, argued that Ms. Brewer's rejection was based upon her lack of college experience and that the determination of the equivalency of a college background was a matter left to the discretion of management under the labor contract.

The arbitrator did not adopt the employer's position. In his written opinion, Arbitrator Davis recognized that the employer had the right to determine job qualifications for a particular job description classification, but noted that the determination of the qualifications of a *particular* employee may not be done in an arbitrary, capricious or discriminatory manner. He found that the employer Public Library acted in an arbitrary and capricious fashion when it determined that Ms. Brewer lacked the equivalent of two years of a college education. JoAnn

Brewer was awarded the position of Library Assistant II and the Public Library was ordered to make her whole for wages lost since June 20, 1977.

As noted above, the employer successfully sought a court order vacating the award and, on appeal, the order was reversed.

This review requires us to decide whether the arbitrator exceeded the authority granted to him under the collective bargaining agreement when he determined that the agreement required the employer to assess the qualifications of an employee seeking promotion in a manner which was not arbitrary or capricious. If this authority was exceeded, then Arbitrator Davis' award must be vacated as provided in sec. 298.10(1) (d), Stats.[2]

Although presented in several alternative forms, the employer sets forth essentially one argument. Its position is that the collective bargaining agreement reserved solely to management the determination of the qualifications of a particular employee who seeks a promotion.

[2] Sec. 298.10(1), Stats., provides:

"(1) In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:

"(a) Where the award was procured by corruption, fraud or undue means;

"(b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them;

"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any misbehavior by which the rights of any party have been prejudiced;

"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made."

The standard of review of an arbitration award under this statute and under the common law is substantially the same. *Jt. School Dist. No. 10 v. Jefferson Ed. Asso.*, 78 Wis.2d 94, 116, 253 N.W.2d 536 (1977).

This claim is based upon Art. VI, section 1 of the labor agreement, which reads in part:

"Article VI—Classifications—Employment Status
"*Section 1.* The Library reserves the right to determine. . . the job description classifications needed to operate the facilities. . . ."

The apparent thrust of the employer's claim is that the above-quoted provision vested in the employer the right to determine the objective qualifications for a given job.[3] The employer's position is that this provision also allowed the employer to assess the qualifications of a given employee in any manner, whether or not such manner could be deemed irrational, arbitrary or capricious. The employer argues that the arbitrator, by holding management's assessment of individual employee qualifications to a standard of rational, non-arbitrary discretion, modified or altered the employer's contractual rights. It is claimed that this was in excess of the authority granted to the arbitrator in Art. V, section 4 of the contract. That section denies the arbitrator the power "to add to, subtract from, modify or extend terms of [the] agreement." The employer therefore argues that the award must be vacated pursuant to sec. 298.10(1)(d), Stats., because the arbitrator exceeded the powers granted to him.

[1]
In reviewing the validity of this arbitration award, several basic principles guide our discussion. The law of Wisconsin favors agreements to resolve municipal labor disputes by final and binding arbitration. An arbitrator's award is presumptively valid, and it will be disturbed only where invalidity is shown by clear and con-

---

[3] The arbitrator agreed that the employer had the authority to set job qualifications for a given job, but went on to rule that once determined, the employer could not arbitrarily and capriciously determine the qualifications of a given employee.

vincing evidence. *Milwaukee Bd. of School Directors v. Milwaukee Teachers' Ed. Asso.,* 93 Wis.2d 415, 422, 287 N.W.2d 131 (1979).

This court's acceptance of the *Steelworker's Trilogy*[4] in the case of *Dehnart v. Waukesha Brewing Co.,* 17 Wis. 2d 44, 115 N.W.2d 490 (1962), is indicative of a policy of limited judicial review in cases involving arbitration awards in labor contract disputes. A final and binding arbitration clause signifies that the parties to a labor contract desire to have certain contractual disputes determined on the merits by an impartial decision-maker whose determination the parties agree to accept as final and binding.[5] Great deference is paid to the arbitrator's award as the product of the initial bargain of the parties. Therefore, the court's function in reviewing the arbitration award is *supervisory* in nature. The goal of this review is to insure that the parties receive what they bargained for. *Milwaukee Pro. Firefighters Local 215 v. Milwaukee,* 78 Wis.2d 1, 22, 253 N.W.2d 481 (1977).

The parties bargain for the judgment of the arbitrator—correct or incorrect—whether that judgment is one of fact or law.

"[T]he arbitrator is the parties' officially designated 'reader' of the contract. He (or she) is their joint *alter ego* for the purpose of striking whatever supplementary bargain is necessary to handle the anticipated, unanticipated omissions of the initial agreement. Thus, a 'misinterpretation' or 'gross mistake' by the arbitrator becomes a contradiction in terms. In the absence of fraud

[4] *See United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593 (1960).

[5] Elkouri & Elkouri, *How Arbitration Works* 2 (3d ed. (1973)). *See also Stradinger v. City of Whitewater,* 89 Wis.2d 19, 31, 277 N.W.2d 827 (1979).

or an overreaching of authority on the part of the arbitrator, he is speaking for the parties, and his award *is* their contract. That is what the 'final and binding' language of the arbitration clause says. In sum, the arbitrator's award should be treated as though it were a written stipulation by the parties setting forth their own definitive construction of the labor contract." St. Antoine, *Judicial Review of Labor Arbitration Awards: A Second Look At Enterprise Wheel and Its Progeny*, 75 Mich. L. Rev. 1137, 1140 (1977).

Enforcement of the award is enforcement of the parties' bargain. Having agreed to be bound by the arbitrator's determination, the arbitrator has the "authority" to err and a mistake of judgment is plainly not grounds for vacating an award under sec. 298.10 (1) (d), Stats.[6]

The arbitrator's award must be sustained or vacated on the basis of these principles. This controversy presents us with a situation where there is no dispute about the substantive arbitrability of the issue submitted for determination, nor is this a case where a party claims that the collective bargaining agreement did not authorize a particular award.[7] The employer's sole argument is that the arbitrator modified or altered the labor contract by ignoring the provision of the agreement which the employer claims reserves to the management the right to assess qualifications of individual employees. If the arbitrator's alleged modification or alteration was in fact a mere construction and interpretation of the labor contract, then the award must be sustained.

There is an inherent tension between the finality of arbitration and the contractual limitation on the arbi-

---

[6] *See Jt. School Dist. No. 10 v. Jefferson Ed. Asso.*, 78 Wis.2d at 116.

[7] *See e.g., Milwaukee Police Asso. v. Milwaukee*, 92 Wis.2d 145, 285 N.W.2d 119 (1979), wherein we decided that a particular issue under the labor contract was arbitrable but that the award ordered by the arbitrator was not authorized by the agreement.

trator preventing him from modifying the labor agreement. The collective bargaining agreement is not fashioned so as to expressly govern every imaginable labor controversy that may arise during the term of the contract. Disputes are expected to arise and be resolved through the grievance procedure in accord with the general terms of the contract. The very nature of the grievance procedure makes it likely that those matters not clearly addressed by the contract will be submitted to arbitration. It is the duty of the arbitrator to resolve such contractual disputes and rare will be the case when a party aggrieved by an award will not view the arbitrator's opinion as adding to, subtracting from, or otherwise modifying the collective bargaining agreement. It would be contrary to a policy which favors the final resolution of labor disputes through arbitration to afford a litigant a review of the merits of an arbitral decision simply because it does not come squarely within the terms of any one contractual provision. "The arbitrator cannot be effective as the parties' surrogate for giving shape to their necessarily amorphous contract unless he is allowed to fill in the inevitable lacunae." St. Antoine, *Judicial Review of Labor Arbitration Awards: A Second Look At Enterprise Wheel and Its Progeny, supra,* at 1153.

■

Conversely, a contract term which denies the arbitrator authority to alter the agreement is a reflection of the parties' legitimate expectation that the contract will govern the resolution of a labor dispute. Such a contract term regulating the authority of the arbitrator must not be ignored. The United States Supreme Court has held an arbitrator is not free to administer his own brand of industrial justice. He must remain faithful to his obligation to fashion an award which draws its essence from

the labor contract. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. at 597.

This court on previous occasions has stated that an arbitration award will not be enforced when it is the product of perverse misconstruction. *Milwaukee v. Milwaukee Police Asso.*, 97 Wis.2d 15, 25, 292 N.W.2d 841 (1980); *Milwaukee Bd. of School Directors v. Milwaukee Teachers' Ed. Asso.*, 93 Wis.2d 415, 422, 287 N.W.2d 131 (1979); *Milwaukee Police Asso. v. Milwaukee,* 92 Wis.2d 145, 154, 285 N.W.2d 119 (1979); *Jt. School Dist. No. 10 v. Jefferson Ed. Asso.*, 78 Wis.2d at 117. This controversy involves a contract construction which is alleged to add to or modify the labor agreement. In such a situation, we conclude that the arbitrator's determinations should not be disturbed unless his construction of the contract may be considered perverse.[8] Where an award is based upon a perverse misconstruction of the labor contract, the arbitrator exceeds the authority granted to him by the agreement of the parties.

Such a view is in accord with the supervisory role of this court and its effort to ensure that the parties obtain that which they bargained for. *See Milwaukee Pro. Firefighters' Local 215 v. Milwaukee,* 78 Wis.2d at 22. Two parties who enter into an arbitration agreement have a right to expect that their arbitrator will exercise a measure of rational judgment in resolving disputes submitted for settlement. Such expectations form a part of the agreement and when a court declines to enforce an

[8] For a similar treatment of this issue, *see Boise Cascade Corp. v. United Steelworkers of America,* 588 F.2d 127 (5th Cir. 1979). In that case the court ruled that a contract term could "rationally" be viewed as ambiguous and therefore the arbitrator did not alter or modify the contract when he used the common law of the plant instead of the ambiguous term to resolve the labor dispute. *Id.* at 130.

award on the basis of perverse misconstruction, the court may be viewed as protecting the bargain of the parties and insuring the integrity of the arbitration process.[9]

We cannot say that the award of the arbitrator in this case was based upon a perverse misconstruction of the contract. He reasoned that the employer agreed to promote employees on the basis of their qualifications and this agreement carried with it the obligation to assess individual employee qualifications in a manner which is not arbitrary and capricious. This interpretation is not without foundation in reason. However, we note that the arbitrator's interpretation would have been sustained in similar fashion if he would have reasoned that the employer had unfettered discretion in assessing the qualifications of individual employees. Under the terms of this contract, such a view would not have been perverse.

We express no opinion regarding the correctness of either view. The duty of this court in this case is not to review the merits of the arbitration award but rather to ensure that the parties have received the benefit of a proceeding that is not tainted with a perverse misconstruction of the labor agreement.

Our decision in *Milwaukee v. Milwaukee Police Association,* 97 Wis.2d 15, 292 N.W.2d 841 (1980), has been suggested as requiring a decision in favor of the employer. However, that case does not control the disposition of this matter. In *Milwaukee v. Milwaukee Police Association,* we considered the validity of an award which required the Milwaukee Chief of Police to transfer a police officer to a particular assignment. The court consid-

---

[9] *Cf.* Kaden, *Judges and Arbitrators: Observations on the Scope of Judicial Review,* 80 Columbia L. Rev. 267, 297 (1980).

ered the interaction of the labor contract with the chief's statutory duties and prerogatives. We concluded that the

". . . contract provisions providing for the reservation of the right to transfer in the Chief of Police; the express acknowledgement in the contract of the Chief's statutory responsibilities under Chapter 586 and the prohibition against the impairment of these responsibilities, when examined cumulatively, give the Chief of Police unrestricted discretion over transfers within the department." *Id.* at 30.

It was held that the arbitrator had no authority to order a transfer as a remedy to the dispute. We noted that there was

". . . nothing in the agreement to limit this right to only those transfers which the arbitrator deems fair and impartial. The arbitrator ignored the numerous contract provisions detailed above. The arbitrator, in essence, added a provision to the agreement which did not otherwise exist and thereby exceeded the powers vested in him by the contract." *Id.* at 31.

*Milwaukee v. Milwaukee Police Association,* does not stand for the proposition that an arbitrator adds or modifies a labor contract whenever he implies a duty of fair and impartial administration of a contract term on the employer.

Along with the *Milwaukee v. Milwaukee Police Association* decision, several other recent cases decided by this court have vacated arbitration awards in light of statutes which were in conflict with such awards. *See Milwaukee Bd. of School Directors v. Milwaukee Teachers' Ed. Asso.,* 93 Wis.2d 415, 287 N.W.2d 131 (1979); *Milwaukee Police Asso. v. Milwaukee,* 92 Wis.2d 145, 285 N.W.2d 119 (1979). In each of these cases, the court was concerned with the effect of the arbitration award in light of the statutory obligations or prerogatives of a

municipal officer. The statutes giving rise to these obligations or prerogatives were incorporated by reference into the municipal labor agreement and these duties and rights were reserved to the municipal officers under the contract. Although the arbitrator is given great deference when construing the contractual rights of the parties, the construction of a statute is within the province of the court. Where a statutory duty or prerogative is reserved as a management right under a municipal labor contract, this court may properly assess the validity of the award in light of the municipal employer's statutory obligations. In such cases, the judgment of the arbitrator will not be given the deference which it might ordinarily be awarded in the absence of a relevant statute.[10]

No claim has been made in this case that enforcement of any aspect of the arbitration proceeding conflicts with a statutory right or duty of the employer in such a manner that would allow this court to interfere with the judgment of the arbitrator. We must therefore defer to the resolution of this dispute as determined by Arbitrator Davis.

*By the Court.*—The decision of the court of appeals is affirmed.

COFFEY, J. (*dissenting*). I agree with the holding of the trial court that the arbitrator usurped the prerogative of the city, acting through its public library officials, to establish job qualifications. The union filed a grievance on behalf of JoAnn Brewer, alleging that the library had violated art. VIII, sec. 3, of the collective bargaining agreement between the library and the union. The relevant portion of the section which the

[10] *Compare* Kaden, *Judges and Arbitrators: Observations on the Scope of Judicial Review,* 80 Columbia L. Rev. 267, 286 (1980).

union claimed was violated dealt with vacancies not filed by transfers within the library system. Such vacancies were to be posted and employees given an opportunity to apply for them, according to art. VIII, sec. 2 of the collective bargaining agreement. Art. VIII, sec. 3 provided that the employee to fill the vacancy should be selected on the basis of seniority, work record and qualifications.

The vacancy for Library Assistant II was posted in accordance with the collective bargaining agreement. The posting set forth the required qualifications:

"Knowledge of books and authors; knowledge of the principles and practices of library science; ability to undertake public contact work involving familiarity with books; ability to establish and maintain harmonious and effective working relationships with patrons and other employees; ability to operate a typewriter when assigned to cataloging, ordering, or similar duties; two or more years of college (liberal arts) or its equivalent as determined by management."

JoAnn Brewer did not receive the promotion. Jill Gust was selected to fill the vacancy. It is not disputed that she met the requirement of two years of college in liberal arts. It is also undisputed that JoAnn Brewer did not. However, the union claimed that JoAnn Brewer's eight years of work experience in the library was the equivalent of the educational qualification. The library disagreed. It exercised its management prerogative to determine that only formal education would be considered an equivalent of two years of college in liberal arts.

In 1973, there had been another dispute between the union and the library as to the requirement of two or more years of college as a job qualification. In 1973, the qualification standard had stated that two or more years of college was desirable. Nevertheless, the 1973 grievance was resolved on the basis that management

had the right to insist on two years of college. Subsequently, the job classification was modified, so as to remove the statement that two years of college was desired and substitute the language in question, which made two or more years of formal schooling mandatory.

The question submitted to the arbitrator was stated by the parties as follows:

"Did the employer violate the parties' 1977–1978 Collective Bargaining Agreement by denying the grievant the posted position of Library Assistant II and, if so, what remedy is appropriate?"

The only question which the arbitrator was required to determine was whether the vacancy was filled on some basis other than seniority, work record and qualifications. The arbitrator did not decide this question. He went far beyond the scope of the submission, and ruled that the library had acted in an arbitrary, capricious, and discriminatory manner by insisting on its posted and long-standing requirement of two years of college for the job classification.

The majority says the arbitrator implemented the library's duty of fair and impartial administration of the promotion clause of the collective bargaining agreement by implying a duty to assess employee qualifications individually in a manner which was not arbitrary and capricious. Translated, this means that the arbitrator had the power under the submission to strike down educational requirements by determining, as he did in this case, that they were not necessary for the performance of the job. It should be stressed that there is no suggestion in this record or in the arbitrator's decision that the library acted in bad faith toward JoAnn Brewer. The arbitrator's decision that the two year college requirement was arbitrary is grounded on his conclusion that management did not present adequate reasons in

defense of the educational requirement. But the determination of job qualifications is a decision *reserved to management under the collective bargaining agreement, which provides in art. VI, sec. 1, that the library reserves the right to determine job description classifications.* The evidence shows that these classifications include qualifications, and have for a number of years prior to the time this case arose. This was clear to the union as well as to the management, because the identical issue had arisen in an arbitration case in 1973, which the library won. The arbitrator's decision cannot stand unless the majority is willing to say that the arbitrator may invalidate long-standing job qualification requirements applied by management in good faith in this dispute, not on the ground that there was any intent to discriminate against JoAnn Brewer, but on the ground that management had not proved the requirements were necessary to further a legitimate management objective. Apparently the majority is willing to say so. I am not.

For me, this case is controlled by our recent decision in *Milwaukee v. Milwaukee Police Asso.*, 97 Wis.2d 15, 292 N.W.2d 841 (1980), where the court stated as follows:

"We must look to whether the arbitrator exceeded the limits of his power under the contract. If the arbitrator in effect undertook to amend the contract, to substitute his own discretion for that vested in one or another of the parties or if the arbitrator acted to dispense his own brand of justice the award will be vacated. . . . The arbitrator is free to give his own construction to ambiguous language in the collective bargaining agreement but he is without authority to disregard or modify plain and unambiguous provisions. . . . The award must 'draw its essence' from the collective bargaining agreement. . . ." (Citations omitted.) *Id.* at 26–27.

The majority distinguishes *Milwaukee v. Milwaukee Police Asso., supra,* on the ground that the *Milwaukee*

arbitrator's decision conflicted with the management rights given by statute, rather than by the contract. The majority implies that an arbitrator's exclusive power of interpretation and construction does not extend to the construction of a statute. I disagree. The *Milwaukee* contract incorporated the relevant statutes governing the duties and prerogatives of the police chief, expressly reserving matters covered by those statutes to him. The *Milwaukee* arbitrator was called on to construe and apply those statutes by virtue of his power to interpret the terms of the contract. His error was in ordering relief which usurped the power of the chief, in conflict with the statute, and therefore exceeding his power because he undertook to amend the contract. If the statute had been ambiguous on the question of the chief's power to transfer a police officer to a particular assignment, the arbitrator's construction of it would have been binding on the parties. A clear reservation of *management rights (or a clear declaration of union rights, for that matter) in a collective bargaining agreement is entitled to the same dignity as an unambiguous statute which is incorporated into the agreement.* An unclear statute is subject to construction by the arbitrator, without court review, just as an unclear provision of the collective bargaining agreement is. The policy of our law favoring the resolution of municipal labor disputes by final and binding arbitration demands no less.

In the case at bar, the plain terms of the collective bargaining agreement reserved the establishment of job qualifications to management. Management's decision, uniformly applied so far as this record indicates, to require two years of college as a prerequisite for the position of Library Assistant II was not arbitrable. Management was not called on to justify the requirement. I would hold that the arbitrator exceeded the limits of his power under the contract, in that he struck down quali-

fications which were a management determination under the contract, thereby modifying it. He had no power to do this, either under the contract or under the submission, which was restricted to the question of whether the contract had been violated by application of the long-standing requirement of two years of college. I would reverse the decision of the court of appeals and reinstate the judgment of the trial court.