In the Matter of the Arbitration Between:

Madison Teachers Inc., Petitioner-Respondent,

v.

Madison Metropolitan School District,
Respondent-Appellant.

Court of Appeals

*No. 03–0443. Submitted on briefs November 7, 2003.—Decided
February 26, 2004.*

2004 WI App 54

(Also reported in 678 N.W.2d 311.)

701

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Kirk D. Strang* and *Alan G.B. Kim, Jr., Davis & Kuelthau, S.C.*, Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Brett C. Petranech, Lawton & Cates, S.C.*, Madison.

Before Deininger, P.J., Vergeront and Lundsten, JJ.

¶ 1. VERGERONT, J. The Madison Metropolitan School District appeals the circuit court order vacating an arbitrator's decision that certain grievances had been settled between the District and Madison Teachers Inc. (MTI) and were therefore not subject to arbitration. The District contends the circuit court erred in not applying the correct deferential standard of review and that the application of that standard requires affirmance of the arbitrator's decision. We agree. We conclude the arbitrator did not act outside the scope of his authority as MTI asserts. We therefore reverse the circuit court's order and remand with instructions to deny MTI's motion to vacate the arbitrator's decision.

## BACKGROUND

¶ 2. In October 1998, MTI filed a grievance on behalf of three named special education teachers at Toki Middle School alleging violations of the 1997–99 collective bargaining agreement provisions on overload and planning time (Toki grievance). The Toki grievance and others on the same subject were discussed by the District and MTI, which were then in the process of negotiating a successor to the 1997–99 collective bar-

702

gaining agreement. Out of these discussions came an agreement to establish a joint committee to study middle and high school special education overload and planning time issues. The memorandum of understanding (MOU), signed on June 3, 1999, provided as follows:

## MEMORANDUM OF UNDERSTANDING

### Re: Middle and High School Special Education Overload/Planning Time

MTI and the Madison Metropolitan School District (District) agree as follows:

1. The parties will each appoint four (4) participants to a joint committee to study overload and planning time issues for middle and high school special education teachers.

2. The parties will collect data from middle and high school principals and teachers relative to paragraph 1 above. Said data collection shall be completed by September 20, 1999.

3. The parties shall meet weekly, with the teacher appointees provided release time during their contractual work day, between September 20, 1999 and November 1, 1999.

4. The parties shall issue a joint report to the Board of Education and MTI Board of Directors by November 1, 1999.

5. Should the parties not reach agreement on recommended changes by December 1, 1999, said grievances shall be submitted to grievance arbitration.

¶ 3. The joint committee issued a report summarizing the issues the committee had discussed and making recommendations. The report stated that the

703

committee met weekly between September 20, 1999 and November 1, 1999, completed its work on October 27, 1999, and would be submitting its work to the board of education and MTI board of directors in early December. The printed date on the report was December 3, 1999. The cover sheet conveying the report to the board of education and to the MTI board was dated January 11, 2000; it was signed on January 12 by the District's labor relations director and by MTI's executive director.

¶ 4. In the District's view, the MOU was an agreement to resolve the Toki grievance, and once the report was issued and the recommendations were implemented, there was nothing to arbitrate. In MTI's view, the MOU was not intended to resolve the Toki grievance and, even if that had been the intent, a resolution did not occur because the deadlines in the MOU were not complied with.

¶ 5. The 1997–99 collective bargaining agreement establishes a grievance procedure, the fourth level of which provides that "[t]o the extent the grievance remains unresolved at the conclusion of Level 3, Madison Teachers may call for compulsory, final, and binding arbitration."[1] The agreement provides a procedure for the parties' selection of an arbitrator and also provides that "[t]he decision of the arbitration panel shall be final and binding on all parties except as forbidden by law."

---

[1] The 1997–99 collective bargaining agreement provides in Section II-B(6) that "[t]he procedural steps for Madison Teachers shall commence at Level 3." Step 3 involves a written grievance filed by Madison Teachers and a written response by the superintendent or designee, both of which occurred for the Toki grievance.

704

¶ 6. The parties selected an arbitrator and submitted these issues to arbitration: (1) Is this matter arbitrable? (2) If so, did the District violate the collective bargaining agreement when it did not compensate the grievants for working an overload? (3) If so, what is the appropriate remedy?

¶ 7. The arbitrator determined that the June 3, 1999 MOU covered the Toki grievance. He also determined that the terms of the MOU had been satisfied, the grievants and other MTI members had benefited from that, and to the extent the deadlines in the MOU had not been complied with, MTI had acquiesced in the departures from those deadlines. The arbitrator therefore concluded that the Toki grievance had been resolved through a settlement between the parties, and he was without jurisdiction to address the grievances further.

¶ 8. MTI sought an order in the circuit court vacating the arbitrator's opinion under WIS. STAT. § 788.10(1)(d) (2001–02). That provision requires a court upon a party's application to vacate an arbitration award when the arbitrator has "exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." Section 788.10(1)(d). The circuit court determined that the parties did not reach an agreement on the recommended changes by December 1, 1999, as provided in the MOU and did not agree to waive that deadline. The arbitrator's determination to the contrary, the court stated, was based on a "perverse misconstruction of the facts," which resulted in an incorrect application of the law and an incorrect conclusion that the Toki grievance was not arbitrable. The court therefore entered an order vacating the arbitrator's opinion and ordering the grievance to be assigned to a

705

new arbitrator, mutually agreed upon by the parties, for a determination on the merits.

## DISCUSSION

Scope of Review

¶ 9. The standard for our review of the arbitrator's decision is the same as that for the circuit court, and we review the arbitrator's decision without deference to the decision of the circuit court. *City of Madison v. Local 311, Int'l Ass'n of Firefighters*, 133 Wis. 2d 186, 190, 394 N.W.2d 766 (Ct. App. 1986). The scope of the court's review is limited. *City of Oshkosh v. Oshkosh Pub. Library Clerical and Maint. Employees Union Local 796–A*, 99 Wis. 2d 95, 103, 299 N.W.2d 210 (1980). We presume the arbitrator's decision is valid, and we disturb it only where invalidity is shown by clear and convincing evidence. *Id.* at 102–03. Essentially the court's role is supervisory in nature—to insure that the parties receive what they bargained for when they agreed to resolve certain disputes through final and binding arbitration. *Id.* at 103. Courts may not overturn an arbitrator's decision for "mere errors of fact or law, but only when perverse misconstruction or positive misconduct [is] plainly established, or if there is a manifest disregard of the law, or if the award itself is illegal or violates strong public policy." *City of Madison v. Madison Prof'l Police Officers Ass'n*, 144 Wis. 2d 576, 586, 425 N.W.2d 8 (1988) (alteration in original) (citation omitted). The rationale for not vacating awards because of an error of fact or law is that, when parties have agreed to submit an issue to arbitration and have chosen the arbitrator, they have agreed to be

706

bound by the arbitrator's judgment, whether correct or incorrect as a matter of fact or law. *See City of Oshkosh,* 99 Wis. 2d at 103–04.

¶ 10. When a party believes a grievance is not arbitrable under the terms of the collective bargaining agreement, it may submit the merits of the grievance to the arbitrator while reserving the right to challenge the arbitrability of the grievance in court; in that case the court decides the issue of arbitrability de novo. *Joint Sch. Dist. No. 10 v. Jefferson Educ. Ass'n,* 78 Wis. 2d 94, 106, 253 N.W.2d 536 (1977). On the other hand, if the parties submit the issue of arbitrability to the arbitrator for final and binding arbitration, the scope of court review is the same as review of the merits of the award. *Id.* We understand both parties to agree that the latter situation is the case here. Thus, we accord the arbitrator's decision that the Toki grievance was not arbitrable the same presumption of validity, and we apply the same limited scope of review, as that summarized in the preceding paragraph.

¶ 11. Whether the Toki grievance is arbitrable under the collective bargaining agreement depends upon whether it has already been resolved, since grievances are subject to final and binding arbitration only if they remain "unresolved" at the conclusion of Level 3. MTI and the District both acknowledge that parties may resolve a grievance by settlement, and they implicitly agree that if a grievance is settled, it is not arbitrable. *Accord* FRANK ELKOURI & EDNA ASPER ELKOURI, HOW ARBITRATION WORKS 269–70 (Alan Miles Ruben ed., 6th ed. 2003) (it is to be expected that a mutual settlement of a grievance by the parties ordinarily will be held binding on them insofar as the particular

707

instance is resolved). Therefore, whether the Toki grievance is arbitrable depends upon whether the parties settled the grievance.[2]

¶ 12. Because we review the arbitrator's decision, not that of the circuit court, and because MTI is challenging the arbitrator's decision, our discussion focuses on the grounds for MTI's challenge, even though MTI is the respondent on this appeal. MTI's position is that the Toki grievance was not settled because the parties had not reached agreement on changes recommended by the joint committee by December 1, 1999, as required by the June 3, 1999 MOU and by an identical MOU signed by the District's director of labor relations on December 6, 1999, and by MTI's executive director on February 14, 2000. In deciding otherwise, MTI asserts, the arbitrator exceeded his authority in these ways: (1) he amended the plain terms of the MOUs, substituting his view of equity; (2) there is no evidence supporting the arbitrator's findings; and (3) the arbitrator ignored the second MOU.[3]

Construction of the June 1999 MOU

¶ 13. MTI contends the arbitrator impermissibly amended the plain terms of the June 1999 MOU, specifically, the provision provides that "[s]hould the

___

[2] MTI argued before the arbitrator that the June 3, 1999 MOU did not cover the Toki grievance. MTI is not making that argument on appeal.

[3] We have organized the issues somewhat differently than did MTI: MTI raises as a separate and fourth issue that the two MOUs form the basis of the arbitrator's authority, but we have addressed that in the context of the first issue, and we address all evidentiary challenges together, although some appear interspersed among other issues.

parties not reach agreement on recommended changes by December 1, 1999, said grievances shall be submitted to grievance arbitration." According to MTI, there is no evidence that the parties reached an agreement by that date because it is undisputed that the report was not sent to the boards of MTI and the District until January 12, 2000. Therefore, in MTI's view, the arbitrator was amending the MOU to provide for something the parties did not agree to in the MOU and was substituting his view of what was equitable for what the parties had plainly bargained for.

¶ 14. The premise of MTI's argument is that the arbitrator did not have the authority to consider the parties' conduct in deciding whether they had resolved the Toki grievance in spite of the fact that the joint committee's report was not sent to the boards by December 1, 1999. MTI relies on case law holding that an arbitrator is without authority to disregard or modify plain or unambiguous provisions in the collective bargaining agreement. *City of Milwaukee v. Milwaukee Police Ass'n*, 97 Wis. 2d 15, 27, 292 N.W.2d 841 (1980). However, MTI's analysis does not take into account significant aspects of the issue of arbitrability submitted to this arbitrator in this case.

■■■■■

¶ 15. Generally, an arbitrator obtains his or her authority from the collective bargaining agreement, and the arbitrator is confined to construing that agreement. *Milwaukee Prof'l Firefighters Local 215 v. City of Milwaukee*, 78 Wis. 2d 1, 21, 253 N.W.2d 481 (1977). The arbitrator " 'may of course look for guidance from many sources, yet [the] award is legitimate only so long as [the arbitrator] draws its essence from the collective bargaining agreement.' " *Id.* (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S.

593, 597 (1960)). While an arbitrator is without authority to disregard or modify plain or unambiguous provisions, *Milwaukee Police Ass'n,* 97 Wis. 2d at 27, the arbitrator has the authority to construe ambiguous terms in the agreement. *Dane County v. Dane County Union Local 65,* 210 Wis. 2d 267, 283, 565 N.W.2d 540 (Ct. App. 1997). An arbitrator's construction of ambiguous terms in a collective bargaining agreement is within the arbitrator's authority and is not a perverse misconstruction when it has a foundation in reason. *See City of Oshkosh,* 99 Wis. 2d at 106–07. In the context of construing terms of a collective bargaining agreement, arbitrators have utilized rules, standards, and principles borrowed from the jurisprudence developed by courts to resolve disputes over the meaning of terms in contracts. ELKOURI & ELKOURI, *supra,* at 431. They may consider various sources, including the express language of the agreement, statements of the parties in negotiations, bargaining history, custom, and past practice. *Id., supra,* at 434–35, 453, 460.

¶ 16. In this case, the parties agreed to present the issue of arbitrability to the arbitrator. The arbitrator needed to determine whether the Toki grievance was "unresolved" under the collective bargaining agreement. The parties' dispute was not over the proper construction of that agreement; rather, it was a factual dispute over whether they had settled the grievance. The issue of arbitrability as submitted to the arbitrator did not contain any limits on the arbitrator's authority beyond that already contained in the collective bargaining agreement. It is apparently MTI's position that, in deciding whether the grievance had been settled, the arbitrator could not consider the parties' conduct but could consider only the two (identical) MOUs, which laid out the procedure the parties agreed to follow in

710

resolving the grievance. However, MTI cites no authority for this proposition. Moreover, the parties did not, in their submission of the issue to the arbitrator, limit his authority to construction of the MOUs. Indeed, both parties presented evidence to the arbitrator on the activities of the joint committee that was established pursuant to the June 1999 MOU and on their respective views of the relation of that activity to the Toki grievance.

¶ 17. MTI also argues that the arbitrator did not have the authority to apply his own idea of equity. We do not agree with this characterization of the arbitrator's decision. The arbitrator viewed the evidence as showing that the parties had agreed to resolve the grievance even though they did not meet the December 1, 1999 date in the June 1999 MOU for submitting the report to both boards. Although not using the term "waiver," the arbitrator in essence decided that MTI had by its conduct waived the right to insist on the condition of the December 1, 1999 deadline. The doctrine of waiver of conditions in an agreement, such as deadlines for performance, is a well-established principle in contract law. *See* 8 Catherine M.A. Mc Cauliff, Corbin on Contracts §§ 40.1–40.3 (Joseph Perillo ed., rev. ed. 1999). Arbitrators have the authority to use principles of contract law in resolving disputes under collective bargaining agreements. Our supreme court has recognized that "in arbitration, as elsewhere, waiver and estoppel are established doctrines." *Madison Prof'l Police Officers Ass'n*, 144 Wis. 2d at 593–94 (by agreeing to a particular clause in its contract with the union, the city waived its right to rely on an ordinance provision to the exclusion of the contract); *see also Scherrer Constr. Co v. Burlington Mem'l Hosp.*, 64 Wis. 2d 720, 729, 733–35,

221 N.W.2d 855 (1974) (court considered the contract law doctrine of impossibility of performance to be a legal theory that would support the arbitrator's award).

¶ 18. Thus, in the context of deciding whether the time limits in collective bargaining agreements for filing grievances have been complied with, arbitrators may consider the conduct of the parties in deciding whether to enforce those time limits. *See* ELKOURI & ELKOURI, *supra,* at 222. Indeed, in a case on which MTI relies, *NF&M Corp v. United Steelworkers*, 524 F.2d 756, 760 (3rd Cir. 1975), the court upheld an arbitrator's decision that a grievance was timely in spite of the failure to comply with express time limits, citing a number of alternative theories that would support such a decision. MTI has not presented any authority that would preclude an arbitrator from applying the doctrine of waiver or related doctrines of contract law if there is a foundation in the evidence.

¶ 19. We conclude there is nothing in the 1997–99 collective bargaining agreement, the issue of arbitrability as submitted to the arbitrator by the parties, the language of the two MOUs, or the law of arbitration generally that would limit this arbitrator's authority to the terms of the MOUs and preclude him from considering the parties' conduct in determining whether they had resolved the Toki grievance. We also conclude the arbitrator had the authority to apply the doctrine of waiver with regard to the December 1, 1999 deadline if there was a basis in the evidence. We therefore reject MTI's argument that the arbitrator impermissibly "amended" the MOU.

## Evidentiary Basis

¶ 20. MTI's second challenge is to the evidentiary basis for the arbitrator's decision. MTI contends there was no evidence that the modifications after October 27, 1999, were not significant and no evidence that the parties adopted an agreement that resolved the Toki grievance on December 3, 1999. As we have already noted, courts may not reverse an arbitrator's decision because the arbitrator made factual errors. *Madison Prof'l Police Officers Ass'n*, 144 Wis. 2d at 586. Thus, a court does not review the evidence to decide if it constitutes a preponderance for or against the arbitrator's decision, nor does the court disturb the arbitrator's judgment on weight, credibility, and competency of evidence. *See Scherrer Constr.*, 64 Wis. 2d at 726–27. MTI recognizes this but contends that an arbitrator exceeds the scope of his or her authority if there is no factual support whatsoever in the record for the arbitrator's determination, citing *Detroit Coil Co. v. International Ass'n of Machinists*, 594 F.2d 575, 580–81 (6th Cir. 1979), and *NF&M Corp.*, 524 F.2d at 760. The rationale of the court in *NF&M Corp.* is that if there is no evidence in the record supporting an arbitrator's determination, the award cannot be said to have a rational basis in the parties' agreement. 524 F.2d at 760. This is consistent with Wisconsin law, in that a determination that is not supported by any evidence would not have a "foundation in reason." *See City of Oshkosh*, 99 Wis. 2d at 106–07; *Scherrer Constr.*, 64 Wis. 2d at 729–34 (reviewing record to determine if any evidence supports arbitrator's award under either possible legal theory). Accordingly, we will review the record only to

determine if there is any evidence to support the arbitrator's decision that the parties had resolved the Toki grievance.

¶ 21. At the outset, we note that MTI focuses on two specific findings of the arbitrator—that the modifications after October 27, 1999, were not significant and that the parties "adopted" an agreement that resolved the Toki grievance on December 3, 1999. Although we will address these findings in the course of our review of the evidence, we emphasize that the proper issue is not whether there is evidence to support a particular finding, but whether there is any evidence supporting the arbitrator's decision that the parties resolved the Toki grievance. *See Scherrer Constr.*, 64 Wis. 2d at 729 (extensive review of evidence before arbitrator is not only unnecessary but harmful because it might convey impression that court is to carefully scrutinize record to determine whether weight of evidence supports award).

¶ 22. The arbitrator determined that the last meeting of the joint committee was held on October 27, 1999, and that both sides had reached agreement then. The union did seek changes thereafter, the arbitrator found, but "these were not significant modifications." The arbitrator also referred to: the "agreement adopted on December 3, 1999"; the language in that document that "[t]he work of the committee was completed on October 27, 1999, and will be submitted to the Board of Education and MTI Board of Directors in early December"; and the evidence that that document was submitted thereafter to both boards over the signature of MTI's executive director. In addition, the arbitrator noted the absence of any evidence that MTI at that time objected that the MOU was not complied with and noted also the undisputed evidence that the District

had implemented the recommendations. The arbitrator viewed all this evidence together as showing that the parties agreed the terms of the MOU had been satisfied and the Toki grievance had been resolved.

██

¶ 23. We conclude there is evidence in the record to support the arbitrator's determination that the parties had resolved the Toki grievance.

¶ 24. Malina Fischer, a member of the joint committee and assistant director of labor relations for the District, testified as follows. At the conclusion of the October 27, 1999 meeting, the committee had prepared a report with recommendations that all committee members had agreed to. She specifically stated at that time, with all members of the committee present, that the District's agreement to make these changes resolved the "special ed" grievances and "came under paragraph 5 of our charges." MTI did not sign the report immediately thereafter, as anticipated; instead Edward Sadlowski, MTI's assistant director and a member of the committee, asked on behalf of MTI for some changes to the report. Rather than meeting again, the District representatives on the committee communicated among themselves by e-mail and telephone, agreed to make those changes, and they were contained in the report dated December 3, 1999. According to Fischer, the reason the report was not presented earlier to the boards was because of those changes coupled with the schedule of the District board meeting over the winter break. No witness disputed Fischer's testimony on the changes to the report and the resulting delay. According to Fischer, it was not until several months after January 2000 that she learned from Sadlowski that MTI did not view the grievance of one of the Toki grievants resolved, at which she expressed her surprise.

¶ 25. Another District representative on the joint committee also testified that the report from the joint committee resolved the grievances that were the subject of the MOU.

¶ 26. Sadlowski's testimony conflicted with Fischer's and that of the other District committee member. He testified he did not hear Fischer's statement at the end of the October 27, 1999 meeting, and if he had, he would have disagreed. In his view, the MOU was not intended as a method of resolving the Toki grievance, and regardless of the agreement of the committee on recommendations, the grievance remained to be arbitrated. However, as we have noted above, the arbitrator determined that the June 3, 1999 MOU was intended to establish a method to resolve the Toki grievance. To arrive at that determination, the arbitrator evidently accepted Fischer's testimony rather than Sadlowski's, and that credibility determination is for the arbitrator to make, not this court.

¶ 27. MTI asserts there are no documents or witness testimony to support the arbitrator's statement that the modifications after October 27, 1999, were not significant. We disagree. It is not necessary, as MTI apparently believes, that there be direct evidence on the substance of the changes in order for the arbitrator to reasonably determine that the committee had reached an agreement on the recommendations on October 27, 1999. The changes requested by Sadlowski on behalf of MTI were made without the need for another meeting, and the report with the changes made described the committee's work as completed on October 27, 1999. There is no evidence that any representative of MTI disagreed with any part of the report, and MTI's executive director signed the cover letter to the report,

conveying it to the MTI board. This evidence and the reasonable inferences from this evidence support the arbitrator's determination that the changes after October 27, 1999, were not significant and that the committee had completed its work by October 27.

¶ 28. Similarly, there is no merit to MTI's argument that there is no evidence an agreement was "adopted" on December 3, 1999. On that date, the final report with the changes sought by MTI's representative was produced. The arbitrator could reasonably infer from the evidence recounted above that this report constituted an agreement of the parties. Whether the arbitrator was correct in using the word "adopt" is simply not within the scope of our review.

Significance of second MOU

¶ 29. MTI's third challenge is that the arbitrator ignored the evidence that an MOU identical to the one signed on June 3, 1999, was signed by the District's director of labor relations on December 6, 1999, and by MTI's executive director on February 14, 2000. Although this second MOU was admitted into evidence and shown to some witnesses, no witness explained how or why this second MOU came to be signed. The arbitrator did not mention the second MOU in his decision. According to MTI, the arbitrator acted outside the scope of his authority in doing so because this second MOU, along with the first, "governed the question of arbitrability."

¶ 30. We do not agree with MTI's premise that the two MOUs "governed the question of arbitrability." Certainly, based on the District's testimony, the June 3,

1999 MOU was relevant to the parties' intent with respect to resolving the Toki grievance—although, as noted above, MTI's witnesses disputed this. However, the relevance of the second MOU to the parties' intent is not at all clear, given the absence of testimony explaining why an identical document was signed when it was. MTI does not suggest how consideration of this second MOU would have or should have affected the arbitrator's decision. One possible inference from this document is that the parties were aware in mid-December 1999 that the report had not been approved by both boards by December 1, as contemplated in the first MOU, and they wanted to reaffirm that they were both still abiding by the terms of the MOU. True, this inference raises the question, not answered by any evidence: Why didn't they just say that? Another inference may be that the parties intended to reaffirm that the November 1, 1999 and December 1, 1999 dates were critical—this is perhaps MTI's position. But this inference, too, leaves questions unanswered by the evidence: Why did the parties need to repeat what they had already put in writing? If the intent was to show that the parties considered that the first MOU had not been complied with and the grievance should proceed to arbitration, why is there no other evidence of that and why did the executive director of MTI sign the cover letter of the report conveying it to the boards on January 12?

¶ 31. We conclude that the arbitrator could have reasonably decided that the second MOU, in the absence of any explanatory evidence, did not shed any light on whether the parties considered the grievance to be settled; or, alternatively, he could have reasonably decided that it supported the view that the parties

considered the grievance as settled in spite of the delay in sending the report to the boards. Whatever the arbitrator's view, we do not vacate his decision simply because he did not explain his view. *See NF&M Corp.*, 524 F.2d at 759 (an arbitrator is not required to list the reasons for the award). Nor do we vacate the decision even if he inadvertently overlooked the second MOU, because that would be at most a factual error. *See Madison Prof'l Police Officers Ass'n*, 144 Wis. 2d at 586.

## CONCLUSION

¶ 32. The arbitrator here did not act outside his authority in deciding that the Toki grievance was not arbitrable because it had already been resolved. Although the June 1999 MOU was evidence that the parties at that time contemplated they would either have their boards approve the committee's recommendations by December 1, 1999, or the grievance would proceed to arbitration, the arbitrator had the authority, under the collective bargaining agreement and under the parties' agreement submitting the issue of arbitrability to arbitration, to decide whether the parties resolved the grievance even though they did not adhere to that procedural requirement. The arbitrator's authority included the authority to apply the doctrine of waiver if there was a basis in the evidence. There was a basis in the record for the application of that doctrine and for the decision ultimately reached by the arbitrator. For these reasons, the arbitrator's decision had a reasonable basis in the collective bargaining agreement and in the parties' agreement to arbitrate arbitrability.

¶ 33. Accordingly, we reverse the circuit court's order and remand with instructions to dismiss MTI's petition to vacate the arbitrator's decision.

*By the Court.*—Order reversed and cause remanded with directions.