BALDWIN-WOODVILLE AREA SCHOOL DISTRICT,
Plaintiff-Appellant,

v.

WEST CENTRAL EDUCATION ASSOCIATION -
BALDWIN WOODVILLE UNIT,
Defendant-Respondent-Petitioner.

Supreme Court

No. 2008AP519. *Oral argument April 16, 2009.*
*—Decided June 17, 2009.*

2009 WI 51

(Also reported in 766 N.W.2d 591.)

For the defendant-respondent-petitioner there were briefs by *Jina L. Jonen* and the *Wisconsin Education Association Council,* Madison, and oral argument by *Jina L. Jonen.*

For the plaintiff-appellant there was a brief by *Stephen L. Weld II, Ryan J. Steffes,* and *Weld, Riley, Prenn & Ricci, S.C.,* Eau Claire, and oral argument by *Stephen L. Weld II.*

An amicus curiae brief was filed by *Bruce F. Ehlke* and *Hawks Quindel Ehlke & Perry, S.C.,* Madison, on behalf of AFSCME District Council 40.

An amicus curiae brief was filed by *Matthew R. Robbins, Yingtao Ho,* and *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman S.C.,* Milwaukee, on behalf of the Wisconsin State AFL-CIO.

An amicus curiae brief was filed by *Timothy E. Hawks, Jeffrey P. Sweetland, B. Michele Sumara,* and *Hawks Quindel Ehlke & Perry, S.C.,* Milwaukee, on behalf of AFT-Wisconsin, Milwaukee Teachers' Education Association, and Professional Fire Fighters of Wisconsin, IAFF, AFL-CIO.

An amicus curiae brief was filed by *Roger W. Palek,* Madison, on behalf of the Wisconsin Professional Police Association. ·

An amicus curiae brief was filed by *Henry E. Koltz* and *Schmidt, Darling & Erwin,* Milwaukee, and *Dennis M. Selby* and *Selby Law Firm,* Mequon, on behalf of the Alternative Dispute Resolution Section of the State Bar of Wisconsin.

An amicus curiae brief was filed by *Brady C. Williamson, Katherine Stadler, Patricia L. Wheeler,* and *Godfrey & Kahn, S.C.,* Madison, on behalf of the Wisconsin REALTORS® Association.

¶ 1. ANN WALSH BRADLEY, J. The West Central Education Association - Baldwin-Woodville Unit seeks review of an unpublished decision of the court of appeals which reversed an order of the circuit court and vacated an arbitration award.[1] The court of appeals concluded that Christine Johnson was not entitled to back pay because she failed to file a timely grievance against the Baldwin-Woodville Area School District.

¶ 2. The Association contends that the arbitration award should not be vacated. It asserts that the arbitrator's construction of the agreement was reasonable and not a perverse misconstruction. Because we conclude that the arbitrator's construction of the agreement had a foundation in reason, it was not a perverse misconstruction. Accordingly, we determine that the arbitration award should not have been vacated and we reverse the court of appeals.

I

¶ 3. Christine Johnson is a full-time teacher employed by the Baldwin-Woodville Area School District ("the District"). She is a member of the West Central Education Association ("the Association") which represents employees in negotiations with the District. The Association and the District are parties to a collective bargaining agreement that provides for final and binding arbitration of disputes that arise under the agreement.

¶ 4. The arbitration provision states in part:

It is understood that the function of the arbitrator shall be to provide an opinion as to the interpretation and

---

[1] *Baldwin-Woodville Area Sch. Dist. v. W. Cent. Edu. Ass'n,* No. 2008AP519, unpublished slip op. (Ct. App. Oct. 21, 2008) (reversing an order of the circuit court for St. Croix County, Eric J. Lundell, J., presiding).

application of specific terms of this Agreement. The arbitrator shall not have power, without specific consent of the parties, to either advise on salary adjustments, except the improper application thereof, or to issue any opinions that would have the parties add to, subtract from, modify or amend any terms of this Agreement. The decision of the arbitrator will be final and binding on both parties.

¶ 5. On June 26, 2006, the Association filed a grievance with the District on Johnson's behalf. The dispute went to binding arbitration before a Wisconsin Employment Relations Commission arbitrator. The subject of this appeal is the resulting arbitration award. It required the District to make Johnson whole for the wages that she would have earned between 2002 and 2005 had the District properly set her salary in accordance with the collective bargaining agreement. The facts below are taken primarily from the arbitrator's findings of fact.

¶ 6. Johnson was first employed as a Baldwin-Woodville teacher in the fall of 2002. When she initially applied for the position, she provided her resume to the District. The resume indicated that she had a Bachelor's degree in elementary education and had earned an additional eleven graduate school credits.

¶ 7. Under the collective bargaining agreement, a teacher's base salary is determined by a salary schedule which fixes the salary based on the teacher's degree and additional graduate level credits. Teachers who have attained a Bachelor's degree are placed at the BA + 0 lane. Teachers who have received additional graduate credits are placed at advanced lanes such as BA + 8, BA + 16, depending on the number of graduate credits they have received.

¶ 8. The District initially placed Johnson at the BA + 8 lane based on the information she provided in her application. This placement was reflected in the contract prepared by the District which Johnson signed and returned. She was never asked to provide any additional information or documents verifying her education.

¶ 9. Shortly after Johnson began teaching, the District and the Association executed a new collective bargaining agreement. When Johnson signed her revised contract on October 17, 2002, she was unaware that it incorrectly placed her at the BA + 0 lane, when in fact she belonged at the BA + 8 lane. Johnson was paid at the BA + 0 level for the remainder of the 2002–2003 school year, as well as for the 2003–2004 and 2004–2005 school years.

¶ 10. In August of 2005, Johnson realized she was being underpaid. On August 30, she submitted a form entitled "Request to Change Lanes for the 2005–2006 School Year." The preprinted form addressed only the issue of earned graduate credits. Johnson did not make any separate back pay request at that time. The District approved her lane change request and placed her at the BA + 8 lane for the 2005–2006 school year. It also increased her wages prospectively to reflect the lane change, but it did nothing about any back pay for the period of time when Johnson was paid at an incorrect level.

¶ 11. Based on the testimony at the arbitration hearing, the arbitrator determined that it was not until May 2006 that Johnson realized the District had not made her whole for the unpaid wages. She and an Association representative met with the superintendent to resolve the situation. The superintendent declined to act and instead stated that he would take the matter to the School Board. It subsequently voted to deny Johnson's request for back pay. The date of the

Board meeting is not in the record, but the arbitrator determined that Johnson did not learn of the Board's action until late June.

¶ 12. The Association submitted a formal grievance to the District on June 26, 2006. On July 17, the District denied the grievance "for a series of substantive and procedural reasons," including that the grievance was untimely. Subsequently, Johnson filed several additional grievances as required by the collective bargaining agreement. They were denied, and the Association gave notice that it was requesting final and binding arbitration.

¶ 13. The Association stated the issue as follows:

> Did the District violate the Contractual Agreement between the [District] and the [Association] when it refused to pay back pay for the period of time in which Christine Johnson was paid at the incorrect lane on the schedule?

The District countered with the argument that the grievance was untimely.

¶ 14. To determine whether the grievance was timely, the arbitrator interpreted the provision in the collective bargaining agreement that sets forth the grievance procedure. It states in relevant part:

> Grievances shall be processed in accordance with the following procedure:
>
> Step 1
>
> a. An earnest effort shall first be made to settle the matter informally between the teacher and his immediate supervisor.
>
> b. If the matter is not resolved, the grievance shall be presented in writing by the teacher or employee representative to the immediate supervisor within fifteen (15) days after the facts upon which the grievance is based first occur or first become known. . . .

¶ 15. The District argued that the "fact[] upon which the grievance is based" was Johnson's placement at the incorrect pay lane, and that she was aware of the District's mistake in August 2005. The arbitrator acknowledged the District's argument but determined that this was not the fact upon which the grievance was based. Instead, he concluded: "the fact which the grievant is challenging is the District's denial of back pay, not the District's initial placement of Johnson in the BA lane."

¶ 16. The arbitrator concluded that in August 2005, the District implicitly acknowledged that Johnson had been entitled to BA + 8 status all along and that she "could reasonably have expected that the District would rectify its error by making her whole." He determined that the critical event was the decision to deny Johnson's request for back pay: "It is thus the Board's action rejecting Johnson's request that is the critical event in the processing of this grievance[.]"

¶ 17. The arbitrator found that Johnson learned of the Board's decision in "late June." He concluded that Johnson's June 26 grievance was filed within 15 days of when Johnson learned that the Board had decided to deny her request for back pay. Therefore, he determined that the grievance was timely.

¶ 18. The arbitrator also concluded that Johnson's placement at the BA + 0 lane was in violation of the collective bargaining agreement.[2] He ordered the District to "make Christine Johnson whole for the wages she would have earned had she been maintained at the BA + 8 lane for the 2002–03, 2003–04 and 2004–05 school years."

---

[2] The District does not challenge this conclusion.

¶ 19. The District sought judicial review of the arbitration award. The circuit court denied the District's motion to vacate the award. On appeal, the court of appeals reversed the circuit court and remanded with instructions that the award be vacated.

## II

¶ 20. The role of the court in reviewing an arbitration award is essentially supervisory in nature. *Racine County v. Int'l Ass'n Machinists & Aerospace Workers,* 2008 WI 70, ¶ 11, 310 Wis. 2d 508, 751 N.W.2d 312. We are to ensure that the parties received what they bargained for when they agreed to resolve their disputes through final and binding arbitration. *Id.* Courts are guided by the statutory standards in Wis. Stat. §§ 788.10 (2007–08)[3] and 788.11[4] and by the standards developed at common law. *Lukowski v. Dankert,* 184 Wis. 2d 142,

---

[3] Wis. Stat. § 788.10(1) reads:

In either of the following cases the court ... must make an order vacating the award upon the application of any party to the arbitration:

(a) Where the award was procured by corruption, fraud or undue means;

(b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them;

(c) Where the arbitrators were guilty of misconduct in refusing to postpone a hearing, ... or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced;

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

[4] Wis. Stat. § 788.11(1) reads:

700

150–51, 515 N.W.2d 883 (1994). We give deference to the arbitrator's factual and legal conclusions. *City of Madison v. Madison Prof'l Police Officers Ass'n*, 144 Wis. 2d 576, 585, 425 N.W.2d 8 (1988). If the common law and statutory standards are not violated, the court should affirm the arbitrator's award. *Lukowski*, 184 Wis. 2d at 151.

¶ 21. Courts will vacate an award when arbitrators exceeded their powers through "perverse misconstruction,"[5] positive misconduct, a manifest disregard of the law,[6] or when the award is illegal or in violation of strong public policy. *Racine County*, 310 Wis. 2d 508, ¶ 11 (*citing* Wis. Stat. § 788.10(1)(d)); *Lukowski*, 184 Wis. 2d at 149. This case calls upon the court to determine whether the arbitrator exceeded his authority by

In either of the following cases the court . . . must made an order modifying or correcting the award upon the application of any party to the arbitration:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award;

(b) Where the arbitrators have awarded upon a matter not submitted to them . . . ;

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

[5] *See, e.g., City of Oshkosh v. Oshkosh Pub. Library Clerical & Maint. Employees*, 99 Wis. 2d 95, 106, 299 N.W.2d 210 (1980); *Winkelman v. Kraft Foods, Inc.*, 2005 WI App 25, ¶ 7, 279 Wis. 2d 335, 693 N.W.2d 756.

[6] *See, e.g., Racine County v. Int'l Ass'n Machinists & Aerospace Workers*, 2008 WI 70, ¶ 11, 310 Wis. 2d 508, 751 N.W.2d 312; *Lukowski v. Dankert*, 184 Wis. 2d 142, 149, 515 N.W.2d 883 (1994); *City of Madison v. Madison Prof'l Police Officers Ass'n*, 144 Wis. 2d 576, 586, 425 N.W.2d 8 (1988).

perversely misconstruing the collective bargaining agreement.

■■

¶ 22. In reviewing this award, we do not determine which construction—the arbitrator's or the District's—is more reasonable. *See Lukowski,* 184 Wis. 2d at 153 ("[T]his court will not upset the award even if this court might have decided the matter differently.") Instead, we will uphold an award if there is "some reasonable foundation for the interpretation of the contract offered in the decision." *Id.*

■■

¶ 23. When there is no contractual language that would allow for the arbitrator's construction, there is no reasonable foundation for the award. *Lukowski,* 184 Wis. 2d at 153. In such a case, the arbitrator perversely misconstrues the contract and exceeds the authority granted by the collective bargaining agreement. *City of Oshkosh v. Oshkosh Pub. Library Clerical & Maint. Employees,* 99 Wis. 2d 95, 106, 299 N.W.2d 210 (1980). Whether an arbitrator has exceeded his authority by perversely misconstruing the parties' agreement is a question of law that this court reviews independently of the determinations rendered by the circuit court and the court of appeals. *Racine County,* 310 Wis. 2d 508, ¶ 11.

III

¶ 24. We recently reviewed an arbitration award in *Racine County,* 310 Wis. 2d 508. There, we determined that the award "raise[d] substantial separation of powers concerns" and that the arbitrator "exhibited a manifest disregard for the law by making no attempt to apply or interpret" a statutory provision that directly conflicted with the award. *Id.,* ¶¶ 23, 33. Thus, we concluded that

702

the arbitrator had exceeded her authority and we vacated the award. *Id.,* ¶¶ 34, 36.

¶ 25. This case is quite unlike *Racine County.* Here, there is no claim that the arbitrator's award raises a constitutional concern or conflicts with a governing statute. Instead, the District claims that the arbitrator's award conflicts with the collective bargaining agreement freely negotiated between two parties with equal bargaining power. In a case such as this, the arbitrator derives his authority from the parties' contract. "The arbitrator is free to give his own construction to ambiguous language in the collective bargaining agreement but he is without authority to disregard or modify plain and unambiguous provisions." *City of Milwaukee v. Milwaukee Police Ass'n,* 97 Wis. 2d 15, 27, 292 N.W.2d 841 (1980). The award will be upheld if there is some reasonable foundation in the contract language for the award. *Lukowski,* 184 Wis. 2d at 153.

¶ 26. Here, the arbitrator recognized that the limitations provision would bar arbitration of the grievance if "the facts upon which the grievance was based" were known to Johnson more than 15 days before June 26, 2006, the day she filed the grievance. Thus, the arbitrator was required to apply this language to the facts to determine what facts the grievance was based upon and when those facts became known.

¶ 27. This court has remarked, "rare will be the case when a party aggrieved by an award will not view the arbitrator's opinion as adding to, subtracting from, or otherwise modifying the collective bargaining agreement." *City of Oshkosh,* 99 Wis. 2d at 105. Nevertheless, when an arbitrator's interpretation of a negotiated agreement has a foundation in reason, "[i]t would be

contrary to a policy which favors the final resolution of labor disputes through arbitration to afford a litigant a review of the merits of an arbitral decision[.]" *Id.*

¶ 28. The District acknowledges that if the arbitrator's construction of the limitations provision in this case has a foundation in reason, the award cannot be vacated. It contends, however, that the arbitrator's construction is unreasonable because he ignored the unambiguous language of the grievance procedure outlined in the collective bargaining agreement when he determined that Johnson's grievance was timely. The District asserts that the language of the provision—"the facts upon which the grievance is based"—is plain and unambiguous, and there is nothing ambiguous "about how [the provision] applied to the undisputed facts of the case."

¶ 29. The essence of the dispute presents the question of which facts trigger the limitation. To prevail, the District must show that there was no foundation in reason for the arbitrator's construction that the "fact[] upon which the grievance is based" was the District's denial of back pay in June of 2006.

¶ 30. Under the District's interpretation of the collective bargaining agreement, the triggering event is Johnson's realization that she had been underpaid. The District has advanced alternative dates when this event could have occurred. The District has argued that this event occurred in August 2005, when she filed a request to change lanes. However, at oral argument, the District contended that at the latest, the triggering event occurred in September:

> In September of 2005, when [Johnson] request[s] [] the movement and [she] knows she was improperly paid, that's the trigger. That's when she knows the underlying facts. That's when she has to file her grievance. . . .

704

The board didn't pay her the back pay . . . She obviously wasn't getting the money in terms of back pay. She didn't get her money in the first payroll; she didn't get her money in the second payroll, she didn't get her money in the fifteenth payroll.

¶ 31. In its brief to the circuit court the District selected a different date on which Johnson was aware of the facts underlying the grievance. It argued that "the 'grievable' event with respect to [Johnson's] placement on the salary schedule occurred in October 2002" when she was initially placed at the BA + 0 lane. The District continued:

Even if the Court accepts [Johnson's] argument that signing the 2002–03, 2003–04, and 2004–05 individual employment contracts, all clearly setting out her placement on the BA + 0 credits lane, somehow does not prove that [Johnson] "knew" of her salary grid placement for those three years, her August 2005 request for a change to the BA + 8 lane demonstrates that she knew of the allegedly incorrect lane placement at that time.

¶ 32. The District has offered several possible dates for the triggering event, all of them contrary to the arbitrator's determination that the triggering event occurred when the Board decided to deny Johnson's back pay.[7] In reviewing this award, we do not determine which construction is the most reasonable. *Lukowski,* 184 Wis. 2d at 153. Instead, we simply examine whether

[7] Despite offering several different dates, the District has never asserted that the fact triggering the grievance occurred in May 2006, the date selected by the dissent as the latest date on which the facts underlying the grievance became known. *See* dissent, ¶ 46.

the determination that the arbitrator made had "some reasonable foundation." *Id.*

¶ 33. The arbitrator reasoned that Johnson was not aware that she had a grievance with the District in August 2005 because "she could have reasonably expected that the District . . . [would make] her whole." When she brought the matter to the attention of the superintendent in May 2006, she still did not know that the District would refuse to grant her request for back pay. The arbitrator determined that Johnson did not know that she had a grievance with the District until she was aware that the District had made a decision to deny back pay.

¶ 34. He stated:

> The District contends the grievance failed to conform with Step 1(b), Section C, Article VI, which requires that the grievance "be presented in writing . . . to the immediate supervisor within fifteen (15) days after the facts upon which the grievance is based first occur or first become known."

> I find that this clause does not prevent consideration of this grievance. First, the fact which the grievant is challenging is the District's denial of back pay, not the District's initial placement of Johnson in the BA lane. . . . It is thus the Board's action rejecting Johnson's request that is the critical event in the processing of this grievance. . . .

> Because the District has failed to provide any evidence at all that the District's action rejecting Johnson's request for back pay was more than 15 days prior to June 26, the provisions of Article VI, Section C, Step 1(b) do not make this matter untimely.

¶ 35. Upon review of the arbitrator's decision, we conclude that his construction of the limitation provision had a foundation in reason. Our obligation is not to

review the merits of the award,[8] but rather to ensure that the parties have received what they bargained for—resolution of the labor dispute within the terms of the collective bargaining agreement and by an arbitrator who has not exceeded his authority by going beyond the terms of the contract.

¶ 36. The court of appeals, however, concluded that the "arbitrator's construction of the fifteen-day time limit for filing grievances was a perverse misconstruction because it was contrary to the collective bargaining agreement's plain and unambiguous terms." *Baldwin-Woodville Area Sch. Dist. v. W. Cent. Edu. Ass'n,* ¶ 12, No. 2008AP519, unpublished slip op. (Ct. App. Oct. 21, 2008). It determined that the "fact underlying the grievance was that [Johnson] was paid in the

---

[8] The dissent provides an argument about the merits of the grievance, concluding that the terms of the agreement were "plain" and that the fact underlying the grievance was that Johnson had been placed at the wrong pay lane. Dissent, ¶¶ 39, 47. The dissent's analysis exceeds the limited standard of review for arbitration awards.

There are good reasons for not relitigating the merits of the award upon judicial review. We recognize the dissent's concern that the arbitrator's determination allowed Johnson to maintain a stale claim. *See* dissent, ¶ 51. Nonetheless, we are persuaded by the amicus brief of the Alternative Dispute Resolution Section of the State Bar of Wisconsin: "The viability of arbitration as an alternative dispute resolution method relies upon the process being expedient, fair, and final. If participants are unsure that their dispute will be decided with finality, the presumptive result is that fewer persons will submit to arbitral determination, and will instead commence court-based litigation." When parties with equal bargaining power agree to be bound by the arbitrator's construction of contract terms, courts refrain from reviewing the merits of the award under most circumstances.

707

wrong compensation lane for most of the 2002–03 through 2004–05 school years." *Id.*, ¶ 14. Therefore, the court concluded that to be timely, the grievance "was required to be filed within fifteen days of when this fact occurred or became known." *Id.*

¶ 37. As discussed above, we cannot agree with the court of appeals that the contract unambiguously allowed for only one possible construction. The court of appeals never considered whether the arbitrator's construction of the contract had a foundation in reason. Instead, while paying lip service to the deferential standard of review afforded to arbitration awards, the court of appeals substituted its own preferred construction of "the facts underlying the grievance." The court of appeals' construction of the contract language may well be reasonable, but the court's analysis does not comport with the limited standard of review for arbitration awards.[9]

¶ 38. Because we conclude that the arbitrator's construction of the agreement had a foundation in reason, it was not a perverse misconstruction. Accord-

---

[9] In this case, six amicus briefs were filed by organizations whose members frequently participate in arbitration: the Alternative Dispute Resolution Section of the State Bar of Wisconsin; the Wisconsin Professional Police Association; the Wisconsin State AFL-CIO; the Wisconsin Realtors Association; the AFT-Wisconsin, Milwaukee Teachers' Education Association and Professional Fire Fighters of Wisconsin, IAFF, AFL-CIO; and the AFSCME District Council 40.

All six amici argued that the court of appeals' analysis expanded the "perverse misconstruction" standard and undercut the presumption of finality in arbitration awards. The amici uniformly expressed concern that if allowed to stand, the court of appeals' analysis would reduce the viability of arbitration as an efficient means of resolving disputes in Wisconsin.

ingly, we determine that the arbitration award should not have been vacated and we reverse the court of appeals.[10]

*By the Court.*—The decision of the court of appeals is reversed.

¶ 39. DAVID T. PROSSER, J. (*dissenting*). The majority opinion reverses a unanimous court of appeals decision that vacated the arbitration award in this case. The majority concludes "that the arbitrator's construction of the [collective bargaining] agreement had a foundation in reason" and was therefore not a perverse misconstruction of the agreement. Majority op. ¶¶ 2, 38. I recognize and have no disagreement with the majority's explanation of the well-settled legal rules, principles, and standards that govern the judiciary's supervisory role in reviewing arbitration decisions. *See id.,* ¶¶ 20–23. However, I cannot join the majority opinion because the arbitrator's decision on the timeliness of the formal grievance presented on June 26, 2006, in relation to when the grievant first knew "the facts upon which the grievance was based" effectively amended the plain terms of the grievance procedure set forth in the agreement and therefore was a perverse misconstruction of the agreement. *See Nicolet High Sch. Dist. v. Nicolet Educ. Ass'n,* 118 Wis. 2d 707, 713–14, 348 N.W.2d 175 (1984) (stating that the arbitrator may not amend the agreement "to dispense his

[10] We note that the arbitrator's award stated that "[t]he district may structure the payments as it finds necessary, provided Johnson is made whole by December 31, 2008." This deadline elapsed as the parties pursued judicial review. The parties have not requested that we set a new deadline for payment and we therefore make no determination about the issue here.

own brand of justice" because his power is derived from and therefore limited by the terms of the agreement); *City of Milwaukee v. Milwaukee Police Ass'n,* 97 Wis. 2d 15, 26–27, 292 N.W.2d 841 (1980) ("If the arbitrator in effect undertook to amend the contract . . . the award will be vacated. . . . [H]e is without authority to disregard or modify plain and unambiguous provisions.") (citations omitted); *see also City of Oshkosh v. Oshkosh Pub. Library Clerical & Maint. Employees Union Local 796-A,* 99 Wis. 2d 95, 106–07, 299 Wis. 2d 210 (1980) ("[W]hen a court declines to enforce an award on the basis of perverse misconstruction, the court may be viewed as protecting the bargain of the parties and insuring the integrity of the arbitration process.").

¶ 40. Consequently, the court of appeals' decision to vacate the arbitration award should be affirmed.

I

¶ 41. In this case, the grievant's contractual rights were violated by the school district beginning in October 2002 when it placed her in the wrong pay category, referred to as a "pay lane." The grievant purportedly did not "realize" this error until August 2005, even though her paycheck actually *decreased* in October 2002 and she signed separate "Teacher Contract[s]" for each of the three school years at issue that clearly misstated her pay lane.[1] *See* majority op. ¶¶ 9–10. In August 2005, she submitted a "Request to

---

[1] The grievant signed two contracts for the 2002–03 school year. The first, which was signed on August 15, 2002, stated the correct pay lane at the top of the contract in bold lettering, and it was underlined. A new collective bargaining agreement was then approved, and the grievant was required to sign a new contract for the 2002–03 school year. She did so on October 17, 2002. However, at the top of this contract, underlined and in

Change Lanes *for the 2005–06 School Year"* form. (Emphasis added.) This form, as its title states, is used for teachers requesting that their pay lane be modified for the upcoming school year. It says nothing about adjusting the teacher's compensation for previous years. The form was not designed for that purpose. In fact, the form was designed to facilitate a provision in the agreement that requires teachers to submit evidence of their "increased professional preparation," i.e., graduate school education credits, so that their pay lane adjustment can be approved in September for that school year. Therefore, while *the grievant knew in August 2005 that she had been paid incorrectly for the past three school years,* she did not request back pay for those years when she submitted her request to change pay lanes.

¶ 42. The grievant claims that in May 2006, she realized for the first time that her "Request to Change Lanes for the 2005–06 School Year" was granted for the 2005–06 school year but that she had not been made whole for the underpayment of her salary in the previous school years. Nonetheless, she did not file a formal grievance or contact her immediate supervisor as the grievance procedure in the agreement demands. Instead, she and a union representative met with the school district's superintendent who forwarded the matter to the school board. The grievant's informal request for back pay was then denied by the school

bold lettering, the grievant's pay lane was misstated and her base salary was $660 less than the stated salary on her previous 2002–03 contract. On April 22, 2004, the grievant signed her 2003–04 contract; and on May 20, 2004, the grievant signed her 2004–05 contract. The 2003–04 and 2004–05 contracts both misstated the grievant's pay lane in the same manner.

board some time in "late June" 2006. Thereafter, on June 26, 2006, for the first time, the grievant filed a formal grievance.

¶ 43. On July 17, 2006, the school district denied the formal grievance for several reasons, one being that it was untimely because it was submitted more than 15 days after the grievant first knew of the facts upon which her formal grievance for back pay was based. According to the grievance procedure set forth in the agreement, an initial formal grievance must "be presented in writing by the teacher or employee representative to the immediate supervisor *within fifteen (15) days after the facts upon which the grievance is based* first occur or *first become known.*" (Emphasis added.) A second formal grievance was submitted in late July 2006, and it was also denied by the school board. Ultimately, in accordance with the agreement, the parties agreed to submit the dispute to arbitration.

¶ 44. In his arbitration award, the arbitrator found that the formal grievance submitted on June 26, 2006, was timely and that the school district had violated the grievant's rights under the agreement by incorrectly placing her in the wrong pay lane for three school years (2002–03, 2003–04, and 2004–05). In terms of timeliness, the arbitrator determined that the grievant was challenging the school board's decision to deny her informal back pay request in "late June" 2006. The arbitrator reasoned that because the grievant filed her formal grievance less than 15 days after the school board's decision, the formal grievance was not untimely. This construction of the agreement's grievance procedure is, I believe, perverse and should not be upheld by this court, despite the judiciary's limited role in reviewing arbitration awards.

¶ 45. In this case, we are reviewing the arbitrator's determination that "the fact[] upon which the [formal] grievance is based" is the school board's June 2006 decision denying the grievant's informal request for back pay. For the arbitrator's award to have any foundation in reason, the same June 26 formal grievance for back pay could not have been submitted prior to the school board's decision.[2] If the same formal grievance could have been submitted prior to the school board's decision, then the school board's denial of the grievant's informal request for back pay cannot be "the fact[] upon which the [formal] grievance [wa]s based." Because the same formal grievance could have been submitted prior to the school board's decision, "the facts upon which the [formal] grievance is based" must have "first become known" to the grievant before the school board's decision in "late June" 2006. Several reasons support this conclusion.

¶ 46. The most elementary reason is the fact that the grievant's informal request for back pay in May 2006, which the superintendant forwarded to the school board, is substantively the same request the grievant made in her formal grievance. In both instances, the grievant requested that she be made whole for the school years she was compensated according to the incorrect pay lane. Logically, it would have been impossible for the grievant not to have known of the facts upon which the formal grievance for back pay was based when she made her informal request in May 2006. Otherwise, she would have made no informal

---

[2] The agreement states that "a grievance is any complaint regarding the interpretation or application of a specific provision of" the agreement.

request for back pay. Therefore, the grievant must have "first known" of the underlying "facts upon which the [formal] grievance [was] based," at the very latest, in May 2006, which is more than 15 days before the formal grievance was filed on June 26.[3] *See Baldwin-Woodville Area Sch. Dist. v. W. Cent. Educ. Ass'n,* No. 2008AP519, ¶ 15, unpublished slip op. (Ct. App. Oct. 21, 2008) ("Based on the arbitrator's findings, the latest possible point at which this fact became known was when [the grievant] realized in May[] 2006 that the [school district] was not making her whole for the salary she would have earned[.]") (internal quotations omitted).

---

[3] Even if we assume the grievant did not know of the facts giving rise to her formal grievance for back pay until the last day in May 2006, the grievant would have been required to file her formal grievance, at the latest, by June 21, 2006 (the agreement instructs that weekends and holidays are not included in computing time limits).

The majority notes the school district "never asserted that the fact triggering the [formal] grievance occurred in May 2006, the date selected by the dissent as the latest date on which the facts underlying the [formal] grievance became known." Majority op., ¶ 32 n.7. This statement is not pertinent to the issue in this case—whether the arbitrator's interpretation is a perverse misconstruction of the agreement. *See id.,* ¶¶ 21–23. As the majority states, "In reviewing this award, we do not determine which construction—the arbitrator's or the [school d]istrict's—is more reasonable." *Id.,* ¶ 22. The school district is not asking that we make a determination of when the grievant first knew of the facts upon which her formal grievance for back pay was based. Rather, it is asking that we determine whether the arbitrator's award was arrived at by a perverse misconstruction of the underlying agreement. The purpose of focusing on May 2006 is to show that there is no plausible interpretation of the facts that would permit the arbitrator to conclude the grievant first knew of the facts underlying her formal grievance for back pay any later than May 2006.

714

¶ 47. Additionally, the agreement requires that a formal, written grievance set forth the specific grievance and the facts upon which it is based. In this case, the formal grievance submitted on June 26, 2006, makes two allegations against the school district. The first allegation reads as follows:

> By its actions, it is my contention that the [school district] violated Schedules A and B of the 2003–2005 Collective Bargaining Agreement and Article IX – Section A of the 2005–2007 Collective Bargaining Agreement *by placing [the grievant] in a pay category of the salary schedule lower than the one she had been placed in when hired by the [school district].*

(Emphasis added.) The formal grievance also states that reducing the grievant "a lane for no disciplinary reason . . . was a breach of both the terms of her acceptance of employment . . . and the Collective Bargaining Agreement." Therefore, it is clear that *the formal grievance alleged that the school district's placement of the grievant in the wrong pay lane beginning in 2003 was the breach of the agreement.*[4] As a result, it would be impossible to declare, as the arbitrator does, that the "fact[] upon which the [formal] grievance is based" was the school board's decision to deny the grievant's informal request for back pay in June 2006, because the school board's denial occurred years after the events alleged in the formal grievance.[5]

---

[4] Notably, the grievant was placed in the wrong pay lane beginning in October 2002, but the formal grievance makes no reference to 2002. *See supra,* ¶ 3; majority op., ¶ 9. The arbitrator, however, disregarded the grievant's omission of that fact and awarded her back pay for the entire 2002–03 school year. Majority op., ¶¶ 5, 18.

[5] The majority asserts that this dissent makes an argument on the merits of the grievance and accuses it of "concluding

¶ 48. The second alleged violation presented in the June 26 formal grievance states the following:

> By its actions, it is my contention that the [school district] violated Article VI – *Grievance Procedure* when the [s]uperintendent relinquished his obligation to settle *the matter* informally by either correcting the error or declining to correct the error and *allowing the grievant to pursue the matter to the next level.* By unilaterally taking the matter to the [s]chool [b]oard, the administration usurped the grievant's right to petition the [s]chool [b]oard on the matter and expect an impartial review.[6]

(Emphasis added.) By its very terms, this allegation recognizes the existence of a grievance in May 2006 when the grievant brought her complaint informally to the superintendant. Otherwise, the grievant could not have alleged a violation of the "*Grievance Procedure*" that prohibited her from "pursu[ing] the matter *to the next level* [of the Grievance Procedure]." (Emphasis added.) Therefore, because the formal grievance submitted on June 26, 2006, expressly recognizes the existence

that . . . the fact underlying the grievance was that [the grievant] had been placed at the wrong pay lane." Majority op., ¶ 35 n.8. The majority, however, fails to appreciate that this is what the grievant alleged in her formal grievance. The grievant could not have made more clear the facts upon which her formal grievance was based:

> [I]t is my contention that the [school district] violated Schedules A and B of the 2003–2005 Collective Bargaining Agreement and Article IX – Section A of the 2005–2007 Collective Bargaining Agreement *by placing [the grievant] in a pay category of the salary schedule lower than the one she had been placed in when hired by the [school district].*

[6] This alleged violation was not submitted for arbitration, but the arbitrator had a copy of the formal grievance when he determined the award.

of a grievance in May 2006, there is no foundation in reason for the arbitrator to have stated that the "facts upon which the [formal] grievance is based" were not known by the grievant until "late June" 2006.

¶ 49. Finally, both the majority opinion and the arbitration award expressly recognize that the grievant "realized" in May 2006 that she had not been awarded back pay for the three school years she was paid according to the incorrect pay lane. *See* majority op. ¶ 11. Because she "realized" at that time the school district had not made her whole, she knew the facts upon which her formal grievance for back pay was based at that time as well. It is a complete fallacy to say that the grievant "realized" she was not receiving back pay for the period at issue in May 2006, but that the factual basis for her formal grievance regarding that back pay was not first known until the school board denied her informal request for the back pay. In other words, it is a perverse misconstruction of the agreement to say the grievant "realized" the basis for her formal grievance for back pay in May, but "the facts upon which the [formal] grievance" for back pay "first bec[a]me known" occurred in "late June."

¶ 50. Given the circumstances, there is no doubt the arbitrator acted in an equitable manner so that the grievant could be justly compensated. I do not dispute that the grievant was wronged. However, because the arbitrator derives his power from the agreement itself, he cannot ignore, modify, or amend the plain language of the agreement. *Nicolet*, 118 Wis. 2d at 713–14; *Milwaukee Police Ass'n*, 97 Wis. 2d at 25–27.[7] The arbitrator's

---

[7] The majority accuses the court of appeals of "paying lip service to the deferential standard of review afforded to arbitration awards." Majority op., ¶ 37. The majority, however, "pay[s]

award yields the same outcome as if the 15-day time limit to file the first formal grievance had been disregarded completely, nullifying the requirement for timely grievances. Thus, this is a perverse misconstruction of a collective bargaining agreement "freely negotiated between two parties with equal bargaining power." Majority op. ¶ 25.

¶ 51. By allowing an arbitrator to determine that the facts upon which a grievance is based do not become known to the grievant until an identical informal complaint made by the same grievant is denied, this court is opening the door to the arbitration of stale claims. Under the arbitrator's and the majority's reasoning, a grievant is effectively permitted to file an informal complaint, wait for the resolution, and if the grievant finds the resolution unfavorable, she can file a formal grievance and try again for the same relief. This is an unreasonable interpretation and a perverse misconstruction of the agreement.

¶ 52. For the reasons stated, I respectfully dissent.

lip service" to the standard of review set forth in *Nicolet High School District v. Nicolet Education Association,* 118 Wis. 2d 707, 713–14, 348 N.W.2d 175 (1984) and *City of Milwaukee v. Milwaukee Police Association,* 97 Wis. 2d 15, 26–27, 292 N.W.2d 841 (1980), which state that the arbitrator is not free to modify or amend the terms of the agreement he is construing. Despite reciting this standard, the majority fails to apply it to this case, where the arbitrator has substantially modified the requirements of the grievance procedure set forth in the agreement he construed.