COURT OF APPEALS
DECISION
DATED AND FILED

October 27, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2022AP770**

**STATE OF WISCONSIN**

Cir. Ct. No. 2021CV454

**IN COURT OF APPEALS**
**DISTRICT IV**

WEST SALEM POLICE ASSOCIATION,

    PLAINTIFF-RESPONDENT,

V.

VILLAGE OF WEST SALEM,

    DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for La Crosse County: TODD W. BJERKE, Judge. *Reversed*.

Before Kloppenburg, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  The Village of West Salem appeals a circuit court order vacating an arbitration decision and remanding for a new arbitration proceeding.  The underlying dispute is whether the arbitrator exceeded his authority by disregarding or modifying plain language in a collective bargaining agreement.  Because the arbitrator offered a reasonable interpretation of the agreement, we conclude that he did not exceed his authority.  Accordingly, we reverse the circuit court order.

## BACKGROUND

¶2    Jacob Donley is a police officer employed by the Village, and he is a member of the local police union, the West Salem Police Association.  The Village and the Association are parties to a collective bargaining agreement.

¶3    In September 2020, Donley attended a work-related training event and was exposed to an individual who tested positive for the COVID-19 virus.  As a result of this exposure, Donley's police chief ordered him to quarantine for a period of 14 days.

¶4    Donley had been scheduled to work 92 hours over that 14-day period and, according to the parties, the Village initially paid him for 92 hours of work for that 14-day pay period.[1]  Three months later, the Village's administrator

---

[1] The Village and the Association later stipulated that "Officer Donley was scheduled to work 92 hours during that 14-day period, and Officer Donley was [initially] paid for 92 hours for that period."  We observe that this stipulation does not appear to be entirely consistent with the terms in the collective bargaining agreement addressing the payment of wages.  Specifically, section 17.01 provides that "[e]mployees' regular wages shall be paid in twenty-six (26) equal checks," and that "[t]he Village has the right to adjust paychecks in the event the twenty-six (26) equal paychecks are not earned."  Although arguably, portions of the circuit court's reasoning, summarized below, may have relied on this section, the parties did not raise this section before the arbitrator or the circuit court and neither decision maker directly addressed it.  Nor, on appeal,

(continued)

2

determined that the Village had made a mistake, and that Donley had been overpaid for his period of quarantine. The administrator's analysis was based on the Families First Coronavirus Response Act, Public Law 116-127, § 5102 (2020) (the "Families First Act"), a federal law which, generally speaking, provided that certain employees are eligible for up to 80 hours of paid sick leave for a COVID-19-related quarantine. The Families First Act also provided that it should not be construed "to in any way diminish the rights or benefits that an employee is entitled to under any … collective bargaining agreement." *Id.*, § 5107.

¶5 A supervisor informed Donley that he should have received 80 hours of pay, rather than 92 hours of pay, for the period that he was in quarantine. The supervisor advised him that there were several options to address the overpayment—12 hours of pay could be deducted from a subsequent paycheck or Donley could designate the 12 hours as holiday pay, sick pay, or vacation pay. Of these options, Donley elected to designate the 12 hours as holiday pay. Had he not elected to designate 12 hours as some kind of benefit pay, the Village would have deducted 12 hours of pay from a subsequent paycheck.

¶6 The Association filed a grievance on Donley's behalf. It argued that Donley had been forced to use holiday pay contrary to section 12.01 of the collective bargaining agreement. Specifically, the Association relied on the following language from section 12.01, which governs holiday pay and provides as follows:

> Employees shall be entitled to seventy-two (72) hours of Holiday Time per calendar year at the Employee's

do the parties argue that section 17.01 has any bearing on this dispute. For these reasons, we discuss it no further.

3

regular rate [of pay] …. At the Employee's discretion, holidays can be scheduled as personal time off with the Chief's approval or if the hours are not used as personal time … by December 31, the Village shall pay out the unused holiday time … at the regular rate of pay on the December 31 paycheck.

¶7 The Village's law enforcement committee denied the grievance.

¶8 The Association then sought arbitration, and the matter was assigned to an arbitrator employed by the state employment relations commission. Prior to the arbitration hearing, the parties entered into a stipulation about certain facts, including the facts noted above. The arbitrator held an evidentiary hearing, and the parties submitted briefs.

¶9 The Association argued that the Village's actions violated section 12.01 of the collective bargaining agreement (which governs holiday pay and is quoted above) as well as section 9.01(A) (which governs work periods). Section 9.01(A) provides, in relevant part:

The work period [for officers] shall be three (3) consecutive work days followed by three (3) consecutive days off, with no minimum hours per year. The workdays will consist of two (2) twelve (12) hour shifts and one (1) eight (8) hour shift. To be fair and consistent with all the officers, the placement of the eight (8) hour shift (on an officer's first day back or Friday) shall reverse every six (6) months.

¶10 The Association argued that, because Donley had been scheduled for 92 hours during his period of quarantine, he should have been paid for those 92 hours, and that the Village had no authority to alter Donley's schedule after the fact. It argued that Donley's choice to designate 12 hours as holiday pay was no real choice at all, and was inconsistent with section 12.01, which provides that, "[a]t the Employee's discretion, holidays can be scheduled as personal time off."

4

According to the Association, the question before the arbitrator was not whether Donley "was given options as to how these 12 hours would be paid, but whether the Village was justified in presenting those options to him at all."

¶11 The Village argued that the options it presented to Donley were consistent with the Collective Bargaining Agreement. It relied on (among other things) section 2.01 of the collective bargaining agreement, which governs the Village's management functions. Section 2.01 provides, in relevant part:

> Except as otherwise provided in the agreement, the Village retains the normal rights and functions of management and those that it has by law. Without limiting the generality of the foregoing, this includes the right … to schedule when work shall be performed … and to adopt and enforce reasonable rules and classifications … which are not contrary to the provisions of this Contract.

¶12 The Village also argued that there was no provision in the collective bargaining agreement requiring the Village to pay Donley for the 92 hours he had been scheduled to work—but did not actually work—due to his COVID-19 exposure. According to the Village, Donley would not have been paid for any of the 92 hours but for the Families First Act, which, as discussed above, required certain employers to pay employees up to 80 hours for time spent quarantining.

¶13 The arbitrator issued a written decision siding with the Village. He rejected the Association's argument that the Village had violated section 12.01 of the collective bargaining agreement by forcing Donley to designate 12 hours as holiday leave. The arbitrator explained his reasoning as follows:

> Boiled to its essence, the Association is actually arguing that [Donley] should not have been obligated to use any type of leave. Essentially, the Association contends that once [Donley] was scheduled to work 92 hours, the Village was contractually obligated to pay him for 92 hours even if COVID exposure led to a reasonable order that he

> stay home for two weeks. I do not find there to be any contract provision that creates that obligation. Clearly, the Article 12 holiday leave "discretion" provision relied on by the Association falls far short of any such pay guarantee.

The arbitrator determined that, in the absence of any such guarantee in the collective bargaining agreement, it was appropriate for the Village to pay Donley for 80 hours of work pursuant to the Families First Act.

¶14 The Association filed a summons and complaint challenging the arbitrator's decision in the circuit court, and the circuit court vacated the arbitrator's decision. The court determined that the arbitrator manifestly disregarded the law when he relied on the Families First Act in determining how much pay Donley was entitled to for his period of quarantine, without specifically addressing the collective bargaining agreement's section 2.01 (governing the Village's management authority) or section 9.01(A) (governing work periods), which made up a substantial portion of each party's arguments. The court further determined that the collective bargaining agreement guaranteed that Donley should be paid for every hour that he had been scheduled to work during his period of quarantine, explaining its reasoning as follows: "Officers in West Salem expect to work and be paid for time in accordance with the [collective bargaining agreement] and its [sections 9.01(A)] and [2.01]." And that "[i]f a quarantine happens to fall in a two-week period when an officer expects to work, he or she would be denied of the benefits of the [collective bargaining agreement] if deprived of those work hours."[2]

---

[2] In its decision, the circuit court also expressed puzzlement about why Donley had been scheduled for 92 hours of work during a 14-day period, when, by the court's calculation, the schedule set forth in section 9.01(A) of the collective bargaining agreement would result in no more than 88 hours worked during any 14-day period. The parties agree that this issue is beyond the scope of their current dispute, and we address it no further.

6

¶15    Based on its determination that the arbitrator failed to apply the pertinent provisions in the collective bargaining agreement, the circuit court vacated the arbitrator's decision and remanded the matter to the state employment relations commission for a new arbitration.  The Village appeals.

## DISCUSSION

¶16    The parties agree that the scope of our review of the arbitrator's decision is the same as the scope of the circuit court's review.  ***City of Madison v. Local 311, Int'l Ass'n of Firefighters, AFL-CIO***, 133 Wis. 2d 186, 190, 394 N.W.2d 766 (Ct. App. 1986).  Like the circuit court, we review the decision made by the arbitrator, and we give no deference to the circuit court's analysis.  ***Id.***

¶17    When parties have agreed to submit an issue to arbitration, they have agreed to be bound by the arbitrator's judgment, whether it is correct or incorrect as a matter of law or fact.  ***Madison Teachers Inc. v. Madison Metro. Sch. Dist.***, 2004 WI App 54, ¶9, 271 Wis. 2d 697, 678 N.W.2d 311.  A court's role in reviewing an arbitration award "is essentially supervisory, ensuring that the parties received the arbitration for which they bargained."  ***Lukowski v. Dankert***, 184 Wis. 2d 142, 149, 515 N.W.2d 883 (1994).  Arbitration awards are presumptively valid, and a court's limited scope of review begins with that presumption.  ***Nicolet High Sch. Dist. v Nicolet Educ. Ass'n***, 118 Wis. 2d 707, 712, 348 N.W.2d 175 (1984).

¶18    The pertinent standards are set forth in WIS. STAT. § 788.10 (2019-20),[3] which provides limited circumstances under which a court can vacate an

---

[3] All references to the Wisconsin Statutes are to the 2019-20 version.

arbitration award.[4] Here, the question is whether the arbitrator "exceeded [his] powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." *See* § 788.10(1)(d). Under this standard, we will not vacate the arbitrator's decision merely because he made some error of law or fact. *Madison Teachers Inc.*, 271 Wis. 2d 697, ¶9. The arbitrator has exceeded his powers only if his decision demonstrates "'perverse misconstruction'" or "positive misconduct," if he manifestly disregarded the law, if his decision is illegal, or if it violates strong public policy. *Baldwin-Woodville Area Sch. Dist. v. West Cent. Educ. Ass'n*, 2009 WI 51, ¶21, 317 Wis. 2d 691, 766 N.W.2d 591 (quoted source omitted). To overcome the presumption of validity, a party opposing the award must present clear and convincing evidence that the award is invalid. *Nicolet High Sch. Dist.*, 18 Wis. 2d at 712.

¶19 In this case, the facts were largely undisputed, and the legal question before the arbitrator related to the interaction between the Families First Act and the collective bargaining agreement. As discussed above, the Families First Act,

---

[4] Specifically, WIS. STAT. § 788.10(1) provides that a circuit court must vacate an arbitration award:

> (a) where the award was procured by corruption, fraud or undue means;
>
> (b) where there was evident partiality or corruption on the part of arbitrators, or either of them;
>
> (c) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;
>
> (d) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

which was effective in September 2020 during Donley's quarantine period, provided that employees are entitled to up to 80 hours of pay for periods spent quarantining based on a COVID-19 exposure. However, the Families First Act also provided that it should not be construed "to in any way diminish the rights or benefits that an employee is entitled to under any … collective bargaining agreement." Families First Act, *supra*, § 5107.

¶20     Although not expressly stated in these terms in his decision, we understand the arbitrator to have framed the dispositive question as follows: Does any provision in the collective bargaining agreement guarantee that an employee who is scheduled to work a certain number of hours, but does not actually work those hours, will be paid for those hours? In other words, the arbitrator addressed whether the collective bargaining agreement required the Village to pay Donley for the 92 hours he was scheduled to work during his period of quarantine but that he did not work. The arbitrator stated: "I do not find there to be any contract provision that creates that obligation." From this conclusion, we understand the arbitrator to have determined that the sections of the collective bargaining agreement addressed in the parties' arguments did not guarantee that Donley would be paid for the 92 hours he did not work.[5]

---

[5] The Association argues that, because the arbitrator's decision does not specifically address sections 2.01 (governing the Village's management functions) and 9.01(A) (governing work periods), the arbitrator must not have considered those provisions. We do not agree that this is a reasonable interpretation of the arbitrator's written decision. By stating that he did "not find there to be any contract provision that creates [the] obligation [argued by the Association]," the arbitrator signaled that he had considered the provisions in the agreement that were addressed in the parties' arguments, and that he rejected the Association's proposed interpretation of those provisions.

¶21 The question for this court on appeal is whether the arbitrator "exceeded [his] authority" with this interpretation of the collective bargaining agreement, which is a contract between the Village and the Association. In a case like this, in which the arbitrator derives his authority from that contract, he is free to give his own construction to its provisions, but he is "'without authority to disregard or modify'" its plain language. *Baldwin-Woodville Area Sch. Dist.*, 317 Wis. 2d 691, ¶25 (quoted source omitted). In other words, the arbitrator "exceed[s] his authority by, in effect, undertaking to amend the contract[.]" *Nicolet High Sch. Dist.*, 118 Wis. 2d at 713.

¶22 However, our supreme court has cautioned that it will be the "'rare'" case in which "'a party aggrieved by an award will not view the arbitrator's opinion as adding to, subtracting from, or otherwise modifying'" the contract. *Baldwin-Woodville Area Sch. Dist.*, 317 Wis. 2d 691, ¶27 (quoted source omitted). Accordingly, "when an arbitrator's interpretation of [the contract] has a foundation in reason, 'it would be contrary to a policy which favors the final resolution of … disputes through arbitration to afford a litigant a review of the merits of an arbitral decision.'" *Id.*, ¶27 (quoted source omitted).

¶23 In this case, the Association does not demonstrate that the arbitrator exceeded his authority by disregarding or modifying any plain language in the collective bargaining agreement. That is, the Association does not point to any provision guaranteeing in plain language that an officer who is scheduled to work certain hours will be paid for those hours, whether or not the officer actually works them.

¶24  The Association relies on section 9.01(A), but that section does not contain any such guarantee.  Section 9.01(A) sets a specific work schedule for officers, but does not specifically address payment for scheduled hours:

> The work period [for officers] shall be three (3) consecutive work days followed by three (3) consecutive days off, with no minimum hours per year.  The workdays will consist of two (2) twelve (12) hour shifts and one (1) eight (8) hour shift.  To be fair and consistent with all the officers, the placement of the eight (8) hour shift (on an officer's first day back or Friday) shall reverse every six (6) months.

In the absence of any express language regarding payment, the arbitrator could have reasonably interpreted section 9.01(A) as not requiring the Village to pay officers for hours that they are scheduled to work but do not actually work.[6]

¶25  The Association also relies on section 12.01, but it does not argue that that section contains any guarantee related to payment for scheduled hours.  As discussed above, section 12.01 provides that "holidays can be scheduled as personal time off" at an officer's "discretion."  But there is no assertion that the Village required Donley to schedule any holiday as personal time off.  Under the circumstances, the arbitrator did not disregard or modify any language in section 12.01 when he determined that it had no bearing in this dispute.

¶26  Even if we were to assume that another construction of the provisions of the collective bargaining agreement was possible, we would not vacate the arbitration award on that basis.  As our supreme court has explained, even "'[m]istakes of judgment, mistakes of either fact or law, are not ground for

---

[6] In reaching this conclusion, we do not rely on the Village's interpretation about the meaning of the phrase "no minimum hours per year" in section 9.01(A) or its interpretation of section 2.01, which addresses management functions of the Village.

review of or setting aside an award.'" ***Scherrer Const. Co., Inc. v. Burlington Mem'l Hosp.***, 64 Wis. 2d 720, 728, 221 N.W.2d 855 (1974) (quoted source omitted). Here, the arbitrator offered a reasonable interpretation of the provisions of the collective bargaining agreement argued by the parties, ***Lukowski***, 184 Wis. 2d at 153, and the Association has not shown by clear and convincing evidence that the arbitrator's decision should be vacated.[7]

¶27 Accordingly, for all these reasons, we reverse the circuit court's order vacating the arbitration decision. The effect of our decision is to reinstate the arbitrator's decision.

*By the Court.*—Order reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[7] The Association makes a number of additional arguments, each of which asks us to give our own interpretation of provisions in the collective bargaining agreement and the respective rights of the parties under those provisions. For example, the Association argues that, because Donley was following his chief's orders when he stayed home during his quarantine period, he should not be considered "out of pay status." These additional arguments are not consistent with the limited scope of judicial review of an arbitrator's decision, and we discuss them no further.